[Cite as *State v. Morgan*, 2014-Ohio-250.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-03-021 |
| | : | O P I N I O N |
| - vs - | | 1/27/2014 |
| | : | |
| SHANNON R. MORGAN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012-CR-0534

D. Vincent Faris, Clermont County Prosecuting Attorney, Judith A. Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Francisco E. Luttecke, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, Shannon R. Morgan, appeals his conviction in the Clermont County Court of Common Pleas for sexual battery.

{¶ 2} The record reveals the following facts. In early January 2012, 21-year-old Morgan met 16-year-old C.M. C.M. had recently moved with her family into an apartment near Morgan's home in Clermont County, Ohio. C.M. first met Morgan when she was outside

her apartment complex, and Morgan walked up and introduced himself. The next day, the two saw each other again and exchanged phone numbers. Afterwards, Morgan and C.M. began exchanging text messages. During these text messages, Morgan indicated that C.M. could stay with him if she ever needed a place to stay.

{¶ 3} On January 4, 2012, C.M. got into an argument with her mother and decided she did not want to stay at her home that night. C.M. sent Morgan a text message to "take him up on his offer" to stay with him. The two met and walked back to Morgan's house. When they reached the home, Morgan explained that C.M. would have to stay in the shed behind the house because his grandmother was home. Once in the shed, Morgan attempted to kiss C.M.'s neck. C.M. rejected Morgan's advances, telling him she had a boyfriend. While Morgan attempted to get a heater to work, C.M. laid down and fell asleep. When C.M. fell asleep, she was fully clothed and wearing boots.

{¶ 4} In the early morning hours of January 5, 2012, C.M. woke up, laying on her stomach, feeling pain and pressure inside her vagina. Morgan was behind C.M., her underwear and pants had been pulled down and boots removed. Morgan's penis was inside C.M.'s vagina. C.M. told Morgan, that hurts, "get off." C.M. wiggled away and ran out of the shed. C.M. called her sister to pick her up. Once her sister picked her up, C.M. relayed the incident. C.M.'s sister then told their mother, who called the police. The police, including Detective Robert Bradford of the Miami Township Police Department, responded to C.M.'s home and asked C.M. to take them to Morgan's house. Afterwards, C.M. went to the hospital and a sexual assault examination was performed.

{¶ 5} Morgan was interviewed that night by Detective Bradford at his residence. Bradford first attempted to get a taped oral statement from Morgan.[1] The quality of the

---

1. Morgan was unaware that the conversation was being taped.

recording was poor and very little could be understood. However, according to Bradford, Morgan "told me that he did engage in sexual conduct with [C.M.] in the shed of his residence. The Defendant told me that he was – well, [C.M.] was asleep. He had pulled her pants down and went to have sexual intercourse with her, and that she woke up when he tried to place his penis in her vagina. At that point she left." Detective Bradford also sought to obtain a written statement from Morgan. After Morgan prepared his written statement, Bradford engaged in a question and answer interview to clarify the oral statement and to ensure that there were no discrepancies in the written statement. Bradford wrote the answers and Morgan initialed each of the responses as written by Bradford. One of the questions asked by the detective was: "How did you have sex with [C.M.]?" Morgan's response, recorded by the detective, was: "I put my fingers inside of her vagina. I tried to put my penis in her but was unsuccessful."

{¶ 6} As a result of this incident, on July 11, 2012, Morgan was indicted on two counts of sexual battery, both felonies of the third degree in violation of R.C. 2907.03(A)(3).[2] Count 1 arose out of Morgan's alleged conduct of inserting his penis in C.M.'s vagina while she was asleep. Count 2 was based on Morgan's alleged conduct of inserting his fingers into C.M.'s vagina.[3] For ease of discussion, we will refer to the second count as the "digital"

---

2. **{¶ a.}** R.C. 2907.03(A)(3) provides:

> **{¶ b.}** (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
>
> **{¶ c.}** * * *
>
> **{¶ d.}** (3) The offender knows that the other person submits because the other person is unaware that the act is being committed.

**{¶ e.}** "Sexual conduct" means "vaginal intercourse between a male and female; * * *without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01.

3. The record does not contain a bill of particulars designating the factual basis for each count. However, the record from trial indicates that the state pursued Count 1 based on Morgan allegedly having vaginal intercourse with C.M., and Count 2 was based on Morgan's alleged action of inserting his fingers into her vagina.

count. Morgan waived his right to a jury trial, and on November 13, 2012, a bench trial was held.

{¶ 7} At trial, the state presented the testimony of C.M. and Detective Bradford. In addition, the following exhibits were admitted into evidence: photographs of the shed and surrounding area, the DNA results from C.M.'s rape kit, and Morgan's written statement. At the close of the state's case, Morgan's counsel moved for a Crim.R. 29 motion for acquittal. The motion was denied. The defense submitted Morgan's recorded interview as an exhibit and rested without presenting any testimony. After hearing closing arguments, the trial court found Morgan guilty on both counts. The trial court classified Morgan as a Tier III sex offender and sentenced him to three years on each count to be served consecutively for a total prison term of six years.

{¶ 8} Morgan appeals, challenging only one conviction for sexual battery, the digital penetration count, raising the following two assignments of error for review:[4]

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT VIOLATED SHANNON MORGAN'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY ADMITTING MR. MORGAN'S STATEMENT WITHOUT INDEPENDENT PROOF OF THE CORPUS DELECTI OF ONE OF THE CHARGED CRIMES.

{¶ 11} Assignment of Error No. 2:

{¶ 12} TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MR. MORGAN'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

---

4. Morgan filed a motion for leave to file a delayed appeal, and on April 19, 2013, this court granted his motion.

{¶ 13} In his first assignment of error, Morgan challenges the admissibility of his confession on the ground that the corpus delicti of the digital count of sexual battery was not established. Morgan contends that his conviction under Count 2 for sexual battery was based exclusively on his confession that he digitally penetrated C.M.'s vagina while she was sleeping. As the state failed to present any independent proof of digital penetration, Morgan asserts the trial court erred in admitting the confession into evidence and that his conviction must therefore be vacated.

{¶ 14} As an initial matter, we note that Morgan failed to object to the admission of his confession at trial. Accordingly, he has waived all but plain error. *See* Crim. R. 52(B). An alleged error is plain error only if it is "obvious," and "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Jackson*, 12th Dist. Fayette No. CA2011-01-001, 2011-Ohio-5593, ¶ 13, citing *State v. Perez,* 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 181. The rule should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice. *State v. Underwood*, 3 Ohio St.3d 12, 14 (1983).

{¶ 15} The "corpus delicti" of a crime means the body or substance of the crime, and it consists of two elements: (1) the act, and (2) the criminal agency of the act. *State v. Maranda*, 94 Ohio St. 364 (1916), paragraph one of the syllabus. "It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible." *Maranda* at paragraph two of the syllabus. Accordingly, the corpus delicti rule is a foundational requirement for the admission of a confession. *State v. Van Hook*, 39 Ohio St.2d 256, 261 (1988).

{¶ 16} The purpose of requiring the evidence of the corpus delicti was explained by the *Maranda* court: "The doctrine * * * was born out of great caution by the courts, in consideration of certain cases of homicide wherein it had turned out that by reason of the

- 5 -

failure of the government to prove the death of the person charged as having been murdered it so happened that such person sometimes survived the person accused as his murderer." *Maranda* at 370. In other words, the purpose of "[t]he corpus delicti rule was to prevent a defendant's confession from being used to convict him of a crime that never transpired." *State v. Renner*, 12th Dist. Clermont No. CA2010-06-042, 2011-Ohio-539, ¶ 38, citing *Palazzolo v. Gorcyca*, 244 F.3d 512, 515 (6th Cir.2001). However, in light of the procedural safeguards granted to defendants in modern criminal practice, "the practicality of the rule has come into serious question." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 27. As a result, the Supreme Court has indicated that although the corpus delicti rule remains applicable, it need not be applied "with a dogmatic vengeance." *Renner* at ¶ 12, citing *Van Hook* at 261.

{¶ 17} The burden upon the state to provide some evidence of the corpus delicti is minimal. *State v. Sturgill*, 12th Dist. Clermont No. CA2004-02-008, 2004-Ohio-6481, ¶ 10, citing *Van Hook* at 261-262. The state is not required to present evidence related to all elements of the crime. *Van Hook* at 262. Rather, "[t]he quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is *some* evidence outside of the confession that tends to prove *some* material element of the crime charged." (Emphasis sic). *Maranda* at paragraph two of the syllabus. Furthermore, the state is not required to provide direct and positive proof that a crime was committed. *Sturgill* at ¶ 10. Rather, the state may present circumstantial evidence which tends "to prove the fact that a crime was committed." *State v. Fuller*, 12th Dist. Butler Nos. CA2000-11-217, CA2001-03-048, CA2001-03-061, 2002-Ohio-4110, ¶ 38, citing *Maranda* at 370.

{¶ 18} In the present case, Morgan was charged with sexual battery as a result of allegedly engaging in sexual conduct, specifically, inserting his fingers into the vaginal

opening of C.M., who is not his spouse, when he knew C.M. submitted because she was unaware that the act was being committed in violation of R.C. 2907.03(A)(3). During the trial, prior to the admission of Morgan's confession, C.M. testified that she has never been married to Morgan. Moreover, C.M. testified that she was asleep at the time of the offense and that while she was sleeping, she was unaware that Morgan had inserted his fingers inside of her vagina. This testimony tended to prove some material elements of R.C. 2907.03(A)(3).

{¶ 19} Furthermore, the state presented evidence that C.M. was fully clothed when she fell asleep; however, when she woke up, her boots were removed, her pants and underwear were pulled down, and Morgan was behind her. C.M. testified that she did not remove her clothes. C.M. also testified that she felt "pressure" inside of her vagina and told Morgan that he was hurting her. The state also presented evidence that after the incident was relayed to C.M.'s mother, the police were called and C.M. was referred to the hospital where a rape kit was performed. The fact that C.M. awoke, finding her pants and underwear had been pulled down, combined with the fact that a rape kit was later performed, provides some evidence, outside of Morgan's confession that a crime occurred. *See State v. Ledford*, 12th Dist. Clinton No. CA99-05-014, 2000 WL 127095, *7 (Jan. 24, 2000) (finding that evidence that the victim had stayed overnight with appellant and days later the victim made statements to his mother which caused her to call the police and take him to a hospital where his "private area" was examined was "sufficient to circumstantially prove that a crime had been committed").

{¶ 20} Finally, C.M. was also able to identify Morgan's home, the shed, and the blanket in the shed where she fell asleep. In addition, in Morgan's statement, he indicated that C.M. had rejected his advances because she had a boyfriend. C.M.'s testimony confirmed that Morgan kissed her neck and she told him to stop because she had a boyfriend. This testimony was further corroborated by DNA evidence. The DNA results from

C.M.'s sexual assault examination indicated that Morgan's amylase DNA, from either sweat or saliva, was found on C.M.'s neck and lower back. Such testimony and evidence tends to corroborate Morgan's confession in a manner sufficient to prove that a crime was committed. *See State v. Renner*, 12th Dist. Clermont No. CA2010-06-042, 2011-Ohio-539, ¶ 11.

{¶ 21} Although there was no independent evidence regarding the specific act of digital penetration, the state is not required to produce evidence related to each element of the charged offense to satisfy the corpus delecti rule. *See Van Hook* at 262.[5] The act of digital penetration was but one element of the digital count of sexual battery under Count 2. To hold that the state was required to present specific evidence regarding this one element in order to satisfy the corpus delecti rule would eviscerate the corpus delecti rule as only a foundational requirement for the admission of a confession. Since the quantum or weight of such outside or extraneous evidence required to render an extrajudicial confession admissible is not as much as is required to make a prima facie case, we find that the minimal requirements tending to show that the crime occurred, along with some evidence which tends to prove some material element of the crime of sexual battery were met in this case. Therefore, the state presented evidence of the corpus delecti of the digital count of sexual battery and the trial court properly admitted Morgan's confession into evidence.

---

5. Other courts, including those in Ohio and outside of Ohio, have agreed that the state need not present independent evidence regarding each specific sex act when a defendant is charged with multiple sex offenses in order for the corpus delecti rule to be met. *See e.g. State v. Cook*, 3d Dist. Allen No. 1-11-66, 2013-Ohio-5081, ¶ 24-27; *State v. Edinger*, 10th Dist. Franklin No. 05AP-31, 2006-Ohio-1527, ¶ 32 (finding that the corpus delecti rule had been met and the trial court did not err in admitting appellant's confession that he rubbed his penis against the victim's vaginal area, near and around her anus, and inserted his fingers into her vagina where "[t]he state presented evidence that P.S. was between two to three years old at the time, that she was not defendant's spouse, that she lived in a home with defendant during the relevant time period, that she made certain comments to her father which prompted her father and mother to contact the police, that the police referred them to Children's Hospital, and that thereafter she was examined by a medical professional."); *Cano v. State*, Tex.App.-Corpus Christi No.13-09-00042-CR, 2010 WL 2205169, *1-8 (June 3, 2010) (finding that the corpus delecti rule had been met as to three counts of aggravated sexual assault, including one count for the digital penetration of the victim's vagina, even though the victim testified that she awoke finding appellant's penis going in and out of her vagina and anus and mentioned nothing regarding appellant's fingers, where the state presented sufficient evidence which corroborated defendant's extrajudicial statements and the penetration of the victim's vagina could have been by defendant's fingers as he described in his confession or his penis as the victim described.).

{¶ 22} Morgan's first assignment of error is overruled.

{¶ 23} In his second assignment of error, Morgan contends that he received ineffective assistance of counsel as his trial counsel failed to file a motion to suppress his confession related to the digital count of sexual battery based upon corpus delicti or to argue the same in his Crim.R. 29 motion. As we found under Morgan's first assignment of error that the trial court properly admitted Morgan's confession into evidence, this assignment of error has been rendered moot. *See* App.R. 12(A)(1)(c).

{¶ 24} Morgan's second assignment of error is overruled.

{¶ 25} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.