[Cite as *State v. Brannon*, 2017-Ohio-628.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                            :

        Plaintiff-Appellee,            :

                                     :

   - vs -                                    

                                       :

DEANNA D. BRANNON,              :

        Defendant-Appellant.        :

CASE NO. CA2016-05-096

O P I N I O N
2/21/2017


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2015-09-1395


Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 315 South Monument Street, Hamilton, Ohio 45011, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Deanna D. Brannon, appeals her conviction and sentence in the Butler County Court of Common Pleas.

{¶ 2} On October 21, 2015, the Butler County Grand Jury returned a one-count indictment charging Brannon with unlawful sexual conduct with a minor in violation of R.C. 2907.04(A). The matter proceeded to a jury trial and the jury rendered a verdict of not guilty

for the charged offense and a verdict of guilty for the lesser included offense of attempted unlawful sexual conduct with a minor. The jury further found Brannon was ten or more years older than the victim, J.N., at the time of the offense. At trial, the state presented the testimony of J.N.'s mother, E.N., and Detective Daniel Turner of the Butler County Sheriff's Office, in addition to a recorded interview between sheriff's office detectives and Brannon. The defense presented the testimony of Brannon, Brannon's mobile home park manager, and Brannon's father, David Brannon.

{¶ 3} The evidence presented at trial revealed the following facts. Brannon, who was 35 at the time of the charged offense, lived in a mobile home park in Lemon Township, Butler County, with her parents and her minor daughter. J.N. was 14 years old at the time of the offense and resided in the same mobile home park with his 16-year-old brother, 11-year-old sister, E.N., and E.N.'s fiancé. E.N.'s daughter and Brannon's daughter were friends. On June 27, 2015, Brannon, E.N., the children, and one of the children's friends went to the local area YMCA to swim in the early evening. On the drive home, E.N. stopped to pick up whiskey for the evening. The group then proceeded to E.N.'s mobile home. The state and the defense presented different versions of the facts and circumstances of what transpired at E.N.'s mobile home.

{¶ 4} E.N. testified that once the group returned to her mobile home, she made food for the children, who then watched a movie and went to bed. E.N. and Brannon drank whiskey and listened to music. Brannon frequently refilled her drink and became "so drunk, she was falling all over [the] place * * *." Sometime during the evening, Brannon went into the kitchen and tried "to grab a hold of [J.N.'s] leg," but J.N. pushed her hand away. Brannon's antics also included attempting to climb out of a window to fight someone. Due to Brannon's behavior, E.N. and her 16-year-old son, R.N., physically prevented Brannon from leaving the mobile home by blocking the front door.

- 2 -

{¶ 5} After the children went to bed, the first alleged sexual contact occurred between J.N. and Brannon. During her interview with detectives, Brannon stated that while she was putting her daughter to bed in the top bunk of the children's room, J.N. reached out from the bottom bunk and rubbed his hand against her vagina briefly on the outside of her clothing.

{¶ 6} E.N. further testified that Brannon eventually fell asleep in the living room, which is visible from E.N.'s bedroom. E.N. periodically looked out into the living room throughout the night to check on Brannon. At one point, E.N. looked and did not see Brannon, so she walked out to the living room and heard J.N. say "get off me." E.N. saw Brannon wearing only a sweatshirt and on top of J.N., who was also naked from the waist down. E.N. saw Brannon's vagina and J.N.'s penis touching, but was unable to clearly see whether penetration had occurred. In response, E.N. grabbed Brannon by her ponytail, pulled her off J.N., and dragged her across the floor. Brannon put on her clothing, and E.N. took Brannon and Brannon's daughter to Brannon's mobile home. Upon arrival at Brannon's mobile home, E.N. informed Brannon's father of what she witnessed. Brannon's father testified that E.N. and Brannon both appeared to be intoxicated.

{¶ 7} In her interview with the sheriff's office detectives, Brannon stated the entire group was consuming alcohol at E.N.'s mobile home, including the minor children. Everyone was "partying and having fun," and that J.N. was flirting with her throughout the evening, including repeatedly whispering in her ear. When questioned about what transpired in the kitchen, Brannon verbally agreed with the detectives' characterization of the incident that "this was a consensual thing * * * that stopped before it started." In so doing, Brannon stated she "did not force nothing [sic], and that there was nobody in the kitchen besides her and J.N." Brannon explained that she was on top of the counter with her feet around J.N.'s back and they were rubbing against each other. The two kissed once and J.N. removed both of their pants. Next, Brannon stated she was unsure whether the tip of J.N.'s penis or his finger

penetrated her vagina, but she felt pressure and it was "the very beginning" with "no thrusting at all," and "then he jumped away" when E.N. entered the kitchen.

{¶ 8} Brannon's interview version of events was partly corroborated and partly contradicted by her trial testimony. Brannon testified that J.N., who she knew to be less than 16 years old, had been flirting with her all day by rubbing her shoulders and whispering in her ear. Brannon described this conduct as "kind of hanging on me, following me around." Brannon testified that she had been "passed out on the floor" of the living room until J.N. woke her up in the middle of night and asked her to follow him into the kitchen. In the kitchen, J.N. was trying to push himself up against her and "ripped" off both of their pants. Brannon denied any consensual sexual acts, such as kissing, rubbing J.N.'s penis, or penetration, and explained that she repeatedly told J.N. that she had no interest in having sex with him. Brannon testified that she remained standing while J.N. ripped off her pants until E.N. came into the kitchen and J.N. jumped back, pulling up his pants.

{¶ 9} As stated above, the jury found Brannon guilty of the lesser included offense of attempted unlawful sexual conduct with a minor and that Brannon was ten years older than J.N. at the time of the offense. The trial court sentenced Brannon to six months imprisonment, imposed five years of postrelease control, and ordered her to register as a Tier II sex offender. At the sentencing hearing, the trial court stated it "will not impose a fine or that you pay court costs * * * [and that t]he Court has considered [Brannon's] financial resources and ability to pay financial sanctions both now and in the future." However, in its judgment entry, the trial court ordered Brannon "to pay: [c]osts of prosecution, supervision and any supervision fees permitted pursuant to Revised Code Section 2929.18(A)(4)."

{¶ 10} Brannon now appeals from her conviction and sentence.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR

- 4 -

MURDER [SIC] IN COUNT ONE, AND THE VERDICT ON THIS COUNT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} Brannon was convicted of attempted unlawful sexual conduct with a minor. Pursuant to R.C. 2907.04, one is guilty of unlawful sexual conduct with a minor if the person "who is eighteen years of age or older * * * engage[s] in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." The offense is a third-degree felony "if the offender is ten or more years older than the other person." R.C. 2907.04(A)(3). Additionally, one is guilty of an attempt when one "purposely or knowingly * * * engage[s] in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 14} Brannon contends the trial court erred by overruling her Crim.R. 29 motion for acquittal at the close of the state's evidence because there was insufficient evidence to establish every element of the attempted unlawful sexual conduct with a minor charge beyond a reasonable doubt. Brannon argues there was insufficient evidence to identify J.N., as opposed to R.N., E.N.'s other son, as the victim of the offense. Whether the victim of the offense is J.N., as opposed to R.N., is significant, as R.N. was 16 years old at the time of the offense and an element of the offense is that the victim be "less than sixteen years of age."

{¶ 15} Throughout her testimony, E.N. repeatedly referred to the victim of the offense as her "son." Brannon argues this identification is insufficient because R.N. was also present in the mobile home during the pertinent time frame. Additionally, Brannon claims there was insufficient evidence to demonstrate a voluntary act by Brannon, as required for criminal liability. Finally, Brannon argues her conviction for attempted unlawful sexual conduct with a

minor was against the manifest weight of the evidence for the same reasons.

{¶ 16} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 102 (1997). Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. *Id.*, citing *Black's Law Dictionary* (6th Ed.1990) 1433. A conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 259-60 (1991), *superseded by constitutional amendment on other grounds as stated by Smith* at 102. In evaluating the sufficiency of the evidence, this court "defer[s] to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.

{¶ 17} In contrast to a sufficiency of the evidence challenge, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In making this determination, a reviewing court looks at the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving the conflicts in

the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. "An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Couch*, 12th Dist. Butler No. CA2016-03-062, 2016-Ohio-8452, ¶ 8.

{¶ 18} "A reversal based on the weight of the evidence * * * can occur only after the State both has presented *sufficient evidence* to support conviction and has persuaded the jury to convict." (Emphasis added.) *Tibbs* at 42-43; *see also State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19 (stating that finding a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency). Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 19} After a thorough review of the record, we find the state presented sufficient evidence that would allow the jury to conclude beyond a reasonable doubt that Brannon committed the offense of attempted unlawful sexual conduct with a minor and that Brannon was ten years older than the victim at the time of the offense. Furthermore, we do not find the jury clearly lost its way and created such a manifest miscarriage of justice to require reversal of Brannon's conviction. E.N.'s testimony identifies three instances where J.N. is referred to by name.

{¶ 20} Detective Turner testified that he conducted two interviews as a part of his investigation into the offense. One with Brannon, and the other with J.N. Additionally, on cross-examination, Detective Turner discussed that he relied upon the police report and J.N.'s interview to formulate his questions and approach to Brannon's interview. Detective

Turner stated his interrogation technique included communicating to Brannon that he had previously spoken with J.N. and E.N. Finally, during redirect, Detective Turner explained that there was no indication in his investigation that anyone beside Brannon and J.N. were in the kitchen until E.N. entered. Based on the testimony of E.N. and Detective Turner, the state produced the necessary direct and circumstantial evidence for the jury to reasonably conclude that J.N. was the minor victim.

{¶ 21} Moreover, E.N.'s testimony alone is sufficient evidence to support the jury's finding that Brannon committed a voluntary act to support criminal liability. Brannon's argument relies upon her testimony that she was not a willing participant in the kitchen incident. Specifically, Brannon testified that she told J.N. no multiple times, and that J.N. forced her up against the counter and ripped off her pants. However, as detailed above, there is evidence to the contrary. E.N. testified she observed Brannon on top of her son with their genitals touching, while both Brannon and her son were naked from the waist down. Moreover, Brannon's statements to the sheriff's office detectives are substantive evidence of what occurred and directly contradict Brannon's testimony that J.N. forced himself on Brannon. Brannon's statements further establish slight penetration by either J.N.'s penis or finger, or at least an attempt to penetrate with J.N.'s penis or finger that was interrupted when E.N. entered the kitchen and caught J.N. and Brannon.

{¶ 22} Therefore, Brannon's conviction for attempted unlawful sexual conduct with a minor was supported by sufficient evidence and not against the manifest weight of the evidence. Accordingly, Brannon's first assignment of error is overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

{¶ 25} Brannon claims her trial counsel was ineffective for failing to object to the

admission of Brannon's recorded statements to police because the state failed to establish the corpus delicti of the charged offense by not establishing that J.N., a child under 16 years of age, was the victim. Brannon further argues she was denied effective assistance of trial counsel because Brannon's counsel called her as a witness, whose testimony established J.N. as the victim.

{¶ 26} To prevail on an ineffective assistance of counsel claim, an appellant must establish: (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984); *State v. Ullman*, 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, a defendant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 17. A defendant's failure to satisfy one part of the *Strickland* test negates a court's need to consider the other. *State v. Hurst*, 12th Dist. Brown No. CA2014-02-004, 2014-Ohio-4890, ¶ 7.

{¶ 27} The "corpus delicti" of a crime means the body or substance of the crime, and it consists of two elements: (1) the act, and (2) the criminal agency of the act. *State v. Maranda*, 94 Ohio St. 364 (1916), paragraph one of the syllabus. "It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible." *Id.* at paragraph two of the syllabus.

{¶ 28} "'The doctrine * * * was born out of great caution by the courts, in consideration of certain cases of homicide wherein it had turned out that by reason of the failure of the

government to prove the death of the [alleged victim] * * * it so happened that such [alleged victim] sometimes survived the person accused as his murderer.'" *State v. Morgan*, 12th Dist. Clermont No. CA2013-03-021, 2014-Ohio-250, ¶ 16, quoting *Maranda* at 370. However, in light of procedural safeguards granted to defendants in modern criminal practice, "the practicality of the rule has come into serious question." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 27. Consequently, the Ohio Supreme Court has indicated that although the corpus delicti rule remains applicable, it need not be applied "with a dogmatic vengeance." *Morgan* at ¶ 16. The burden on the state to provide some evidence of the corpus delicti is minimal and it is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged. *State v. Sturgill*, 12th Dist. Clermont No. CA2004-02-008, 2004-Ohio-6481, ¶ 9-10.

{¶ 29} Based on our review, we find Brannon's arguments with respect to the doctrine of corpus delicti are without merit; thus, Brannon's trial counsel was not deficient for failing to raise the issue at trial. As previously noted, the state presented ample evidence of Brannon's guilt through E.N.'s testimony explaining she observed and interrupted Brannon on top of her son while both of them were naked from the waist down with their genitals touching. This testimony alone meets the minimal burden of providing some evidence of the corpus delicti of the crime charged because it tends to prove Brannon engaged in conduct that, if successful, would have resulted in sexual conduct. *See* R.C. 2907.01 (stating penetration, however slight, is sufficient to constitute sexual conduct). E.N.'s testimony tends to prove that had E.N. not entered the kitchen at the exact moment she did, then penetration would have likely resulted because J.N. and Brannon's naked genitals were touching and were on the verge of penetration.

{¶ 30} Furthermore, in establishing the corpus delicti, it is not necessary to prove every element of the crime charged; therefore, contrary to Brannon's claim otherwise, it was not

necessary for the state to prove J.N. was the victim before the admission of Brannon's police interview. Thus, Brannon's trial counsel's choice to not raise the issue at trial does not constitute deficient performance. *See State v. Graham*, 12th Dist. Warren No. CA2013-07-066, ¶ 21 ("counsel is not deficient for failing to raise a meritless issue"). Moreover, because it was unnecessary to prove J.N. was the victim to establish the corpus delicti before the admission of the police interview – even if Brannon's testimony established J.N. as the victim – trial counsel's choice to call her as a witness does not constitute deficient performance.

{¶ 31} Accordingly, Brannon's second assignment of error is overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} APPELLANT'S SENTENCE WAS CONTRARY TO LAW.

{¶ 34} Brannon claims the trial court erred in its judgment entry by holding Brannon responsible for the costs of prosecution when the trial court expressly declined to impose such costs at the sentencing hearing. The state concedes this error. However, the state and Brannon differ in the remedy sought to correct the asserted error. Brannon requests that this court sustain the assignment of error, reverse and vacate the order to pay court costs, and remand the matter to the trial court for the limited purpose of issuing a nunc pro tunc entry. In the alternative, Brannon requests we remand the matter to the trial court for the purpose of holding a hearing to determine whether the court intended to order court costs, and if so, to afford Brannon the opportunity to seek a waiver of those costs. The state concurs with Brannon's alternative remedy and argues that if the trial court meant to impose court costs, then Brannon must be notified on the record and have the opportunity to move the court for a waiver of costs. *See State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, ¶ 22-23 (remanding case to trial court for limited purpose of allowing defendant to move for a waiver of court costs where trial court failed to provide such opportunity before imposing court costs).

{¶ 35} R.C. 2953.08(G)(2) sets forth the standard of review for all felony sentences. *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. Pursuant to R.C. 2953.08(G)(2), when hearing an appeal of a trial court's felony sentencing decision, "[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing."

{¶ 36} As explained in *Marcum*, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 9. Rather, pursuant to R.C. 2953.08(G)(2), an appellate court may only "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the court finds by clear and convincing evidence "(a) [t]hat the record does not support the sentencing court's findings * * *[,]" or "(b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b). A sentence is not "clearly and convincingly contrary to law where the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Eversole*, 12th Dist. Butler Nos. CA2016-01-025 and CA2016-01-026, 2016-Ohio-5776, ¶ 10.

{¶ 37} R.C. 2947.23(A)(1)(a) provides that a trial court "shall include in the sentence the costs of prosecution, including any costs under [R.C. 2947.231], and render a judgment against the defendant for such costs." However, despite the mandatory language of the statute, a trial court may waive the payment of costs. *Joseph* at ¶ 11. This imposition of court costs is civil in nature and distinct from a criminal punishment. *Id.* at ¶ 20. An error by the trial court in imposing court costs "does not create [a] taint on the criminal sentence * * *[,]" but rather, "only [affects] the court and the defendant." *Id.* at ¶ 21. Furthermore, a trial

- 12 -

court's inadvertent error does not render the sentence contrary to law; rather, "'such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court.'" *See, e.g.*, *State v. Chisenhall*, 12th Dist. Clermont Nos. CA2015-07-055 and CA2015-07-063, 2016-Ohio-999, ¶ 35 (stating a trial court's failure to include necessary statutory findings in judgment entry is a clerical error that may be corrected with a nunc pro tunc entry when the trial court made such findings at the sentencing hearing), quoting *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 30.

{¶ 38} Here, the trial court expressly stated at the sentencing hearing: "[t]he Court will not impose a fine or that you pay court costs in this case. The Court has considered your financial resources and ability to pay financial sanctions both now and in the future." However, in the judgment entry ordered Brannon "to pay: [c]osts of prosecution, supervision and any supervision fees permitted pursuant to Revised Code Section 2929.18(A)(4)."

{¶ 39} The circumstances in this case appear to be akin to the circumstances in *Chisenhall* where the trial court made a finding in open court, and then, committed a clerical error contrary to its previous finding by imposing court costs in its judgment entry. However, "[i]t is well settled that a court speaks only through its journal entries." *State v. Marcum*, 12th Dist. Nos. CA2005-10-431 and CA2005-10-446, 2006-Ohio-2514, ¶ 5, citing *State v. Mincy*, 2 Ohio St.3d 6, 8 (1982).

{¶ 40} We are unable to determine whether the trial court intended to impose court costs due to the discrepancy between the trial court's indication at sentencing that it was waiving imposition of court costs and the sentencing entry's imposition of court costs. The sentence did not become a final order until the sentencing entry was journalized. Therefore, even though the trial court indicated at the sentencing hearing that court costs would be waived, it remained free to impose court costs. However, if the trial court intends to impose court costs it must do so in Brannon's presence. *See* Crim.R. 43(A) (requiring defendant's

physical presence during the imposition of sentence); *Joseph* at ¶ 23 (remanding to trial court to conduct further sentencing hearing where defendant may seek waiver of court costs). Therefore, we remand this matter to the trial court. Upon remand the trial court shall either conduct a further sentencing hearing in the presence of Brannon to make a determination with respect to the imposition of court costs or simply issue a nunc pro tunc sentencing entry waiving court costs consistent with its indication at Brannon's sentencing hearing.

{¶ 41} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings.

HENDRICKSON, P.J. and RINGLAND, J., concur.