[Cite as *State v. Catron-Wagner*, 2019-Ohio-153.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106887

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**CIERA C. CATRON-WAGNER**

DEFENDANT-APPELLANT

**JUDGMENT:**
VACATED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-580080-A

**BEFORE:** Jones, J., Boyle P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 17, 2019

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender

BY: Cullen Sweeney
Assistant County Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Anthony Thomas Miranda
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


LARRY A. JONES, SR., J.:

{¶1} In a case of first impression for this court, we are tasked with determining whether defendant-appellant's, Ciera Catron-Wagner ("Catron-Wagner"), violations of the conditions of her community control sanctions were "technical violations."[1]

{¶2} Upon review, we find that they were technical violations; therefore, for the reasons discussed below, the 17-month sentence that the trial court imposed after revoking Catron-Wagner's community control sanctions is vacated and the case is remanded to the trial court for resentencing.

## I. Procedural and Factual History

---

[1]There are two companion cases to this case pending with this court: *State v. Neville*, 8th Dist. Cuyahoga No. 106885, and *State v. Stanko*, 8th Dist. Cuyahoga No. 106886.

{¶3} In 2013, Catron-Wagner was charged with one count each of identity fraud, misuse of credit cards, and theft. In 2014, she entered a plea to misuse of credit cards, a felony of the fourth degree and theft, a felony of the fifth degree.

{¶4} At sentencing, the trial court merged the two counts, and the state elected to proceed on the fourth-degree felony misuse of credit cards conviction. The trial court sentenced Catron-Wagner to three years of community control sanctions with the following conditions: (1) resolve two pending misdemeanor cases within 30 days; (2) no drugs or alcohol and submit to regular testing; (3) a complete prohibition on going anywhere "where drugs or alcohol are sold, served, or used"; (4) maintain and verify her employment at McDonald's and if that McDonald's closes, to obtain full-time employment within 30 days; (5) pay restitution in the amount of $2,212, as well as court costs and supervision fees; (6) complete 100 hours of community service work by December 31, 2014; (7) verify that child support orders are in place for the two fathers of her four children; and (8) no rescheduling probation reporting days or reporting over the phone.

{¶5} The trial court informed Catron-Wagner that if she violated the terms of her community control sanctions the court would impose an 18-month prison term. Catron-Wagner made a $200 restitution payment at the sentencing hearing.

{¶6} Catron-Wagner violated the terms of her community control sanctions four times. After the fourth violation, the trial court imposed a 17-month prison sentence.

**1st Violation Hearing: February 2015**

{¶7} At the first violation hearing held in February 2015, Catron-Wagner's probation officer informed the court that Catron-Wagner failed to complete her community service work, failed to maintain full-time employment, and failed to regularly pay restitution.

{¶8} Catron-Wagner admitted the violations. In mitigation, Catron-Wagner's counsel informed the court that her hours at McDonald's had been cut, but she had since obtained two part-time jobs. Counsel further informed the court that Catron-Wagner had completed over a third of her community service work, but because of changes to her work schedule, encountered problems in getting all her hours done. Moreover, because of the changes in her employment status, along with raising four children, Catron-Wagner also encountered difficulties making regular restitution payments.

{¶9} The trial court continued Catron-Wagner's community control, and ordered her to (1) complete her community work service in the next ten weeks, and (2) make $70 monthly payments for restitution, court costs, and supervision fees.

**2nd Violation Hearing: December 2015**

{¶10} A December 9, 2015 hearing was scheduled for Catron-Wagner's second violation, but she failed to appear. The trial court issued a capias for her, and the hearing occurred on December 14, 2015, after she was taken into custody.

{¶11} Two violations were identified at the second hearing: (1) testing positive for alcohol on three occasions, and (2) failing to make the $70 monthly payments — she made three payments and then stopped. Catron-Wagner admitted the violations.

{¶12} Catron-Wagner's attorney told the trial court that Catron-Wagner was only working about 25 hours per work and therefore was having difficulty making the $70 per month payments. Catron-Wagner told the court that she had consumed alcohol, because she was "depressed with her situation and trying to cope with it," but maintained that she was not an alcoholic.

{¶13} The trial court continued her community control sanctions with the following

modifications: (1) provide proof that she had child support orders against the fathers of her children; (2) attend AA meetings six days a week for 90 days, and thereafter every other day, with attendance at all meetings verified; and (3) make monthly $150 payments for restitution, court costs, and supervision fees.

**3rd Violation Hearing: May 2016**

**{¶14}** According to Catron-Wagner's probation officer, Catron-Wagner had failed to make the $150 payments in December 2015 and March 2016, and had failed to properly verify her attendance at AA meetings. The probation officer indicated, however, that Catron-Wagner verified the child support orders. Catron-Wagner had been laid off from her job for half of December 2015; she did make two $150 payments in April 2016, however. Catron-Wagner had completed her community service work. Catron-Wagner admitted the violations.

**{¶15}** In regard to the AA meetings, Catron-Wagner stated that she went to daily meetings for the first 90 days, and then every other day thereafter. She informed the court that her sponsor was her former mother-in-law. The court questioned her about the meetings and then stated that it did not believe she had been attending and ordered her to "start over" with the meetings.[2] The court continued Catron-Wagner's community control sanctions. In addition to starting over with the AA meetings, the trial court imposed the following conditions: (1) obtain a new AA sponsor who was not a relative, who had at least ten years of sobriety and provide the sponsor's name and number to her probation officer within 30 days; (2) have weekly "meaningful contact with your sponsor"; (3) complete 40 additional hours of community work service in 30 days.

---

[2]For example, the court asked Catron-Wagner which "step" she was on in the program, and Catron-Wagner said step nine. The court questioned her about what step nine was, and Catron-Wagner could not tell the court.

**4th Violation Hearing: December 2017**

**{¶16}** Shortly after the third violation hearing, Catron-Wagner's probation officer notified the trial court that she had violated the conditions of her community control sanctions by twice testing positive for alcohol and submitting "unacceptable AA meeting sheets." The trial court set the matter for a July 2016 hearing date; Catron-Wagner failed to appear, however, and the trial court issued a capias for her.

**{¶17}** Catron-Wagner was eventually arrested and the hearing was held in December 2017. Her probation officer explained that Catron-Wagner's AA sheets were unacceptable because she had signatures on three different sheets, as opposed to them being individually filled out, and some of the sheets were ripped and had been taped back together. The trial court terminated Catron-Wagner's community control sanctions and sentenced her to a 17-month prison term. Catron-Wagner now appeals and presents the following sole assignment of error for our review: "The trial court's 17-month prison sentence for a technical violation of community control sanctions is contrary to law because it exceeded the 180 day maximum sentence authorized by R.C. 2929.15."

## II. Law and Analysis

**{¶18}** Effective September 29, 2017, R.C. 2929.15(B), which governs the penalties a trial court may impose on an offender for a violation of community control sanctions, was amended by 2017 H.B. 49. Pursuant to the amendment, limitations are placed on the prison sentence that may be imposed for an offender who has violated community control for certain fourth- or fifth-degree felonies. The amended statute provides in pertinent part, and as is relative to community control sanctions for fourth-degree and fifth-degree felonies, as follows:

> (B)(1) If the conditions of a community control sanction are violated or if the offender violates a law or leaves the state without the permission of the court or

the offender's probation officer, the sentencing court may impose upon the violator one or more of the following penalties:

\* \* \*

(c) A prison term on the offender pursuant to section 2929.14 of the Revised Code and division (B)(3) of this section, provided that a prison term imposed under this division is subject to the following limitations, as applicable:

(i) If the prison term is imposed for any *technical violation* of the conditions of a community control sanction imposed for a felony of the fifth degree or for any violation of law committed while under a community control sanction imposed for such a felony that *consists of a new criminal offense and that is not a felony*, the prison term shall not exceed ninety days.

(ii) If the prison term is imposed for any *technical violation* of the conditions of a community control sanction imposed for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense or for any violation of law committed while under a community control sanction imposed for such a felony that *consists of a new criminal offense and that is not a felony*, the prison term shall not exceed one hundred eighty days.

(Emphasis added.)    R.C. 2929.15(B)(1)(c)(i) and (ii).

{¶19} The newly amended R.C. 2929.15 was in effect when Catron-Wagner was sentenced.    However, the issue was not raised by either the parties or the trial court. Therefore, we review for plain error.    *See* Crim.R. 52(B).

{¶20} An alleged error is plain error only if it is "obvious," and "but for the error, the outcome of the trial clearly would have been otherwise."    *State v. Morgan*, 12th Dist. Clermont No. CA2013-03-021, 2014-Ohio-250, ¶ 14; *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 181.    The plain error rule should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice.    *State v. Underwood*, 3 Ohio St.3d 12, 14, 444 N.E.2d 1332 (1983).

{¶21} Catron-Wagner was sentenced for fourth-degree felony misuse of credit cards. Thus on its face, 180-day sentence limitation of R.C. 2929.15(B)(1)(c)(ii) appears to apply to her.

**{¶22}** However, in order for the limitation to apply, Catron-Wagner's violations of her community control sanctions must have been "technical violations." The statute does not define "technical violations." The parties do not cite to any cases from this court exactly on point with this issue, and we have not found any either.[3] There are cases from other districts, however, that we review in determining whether the appellants' violations were "technical violations": *State v. Mannah*, 5th Dist. Fairfield No. 17-CA-54, 2018-Ohio-4219; *State v. Cozzone*, 11th Dist. Geauga No. 2017-G-0141, 2018-Ohio-2249; *State v. Davis,* 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672; and *State v. Pino*, 11th Dist. Lake No. 2017-L-171, 2018-Ohio-2825.

### *State v. Mannah*; Fifth Appellate District

**{¶23}** In *Mannah*, the defendant pleaded guilty to one count of possession of heroin and three counts of aggravated trafficking in drugs. The trial court sentenced her to community control sanctions for the possession conviction and one of the aggravated trafficking convictions. As a condition of her community control sanctions, the defendant was to successfully complete all community based correction facility ("CBCF") program requirements. The defendant asked to be unsuccessfully terminated from the program, however. The state sought revocation of the defendant's community control sanctions; the defendant stipulated to the violation.

---

[3]We note *State v. Baker*, 8th Dist. Cuyahoga No. 106716, 2018-Ohio-4027. In *Baker*, the defendant was sentenced to community control sanctions for three felonies that were of the fourth and fifth degrees. In December 2017, after the defendant violated his community control sanctions, the trial court sentenced him to 90 days in prison for each felony, and ordered the sentences to be served consecutively for a total of 270 days in prison. The main issue on appeal was the consecutive nature of the sentences. The defendant contended that the trial court "sidestepped" newly amended R.C. 2929.15(B)(1)(c)(i) and (ii) because his aggregate sentence exceeded the limits of the statute. This court disagreed, finding that "each of Baker's three 90-day prison sentences is within the statutory range for violating a community control sanction imposed for a fourth-or-fifth degree felony." *Id.* at ¶ 14. The trial court apparently found that the defendant's violations were "technical" in nature and, therefore, that the limitations imposed under R.C. 2929.15(B) applied. But the issue of what constitutes a "technical violation" was not before this court in *Baker*, and there is no reference in the opinion as to exactly what the defendant's violation of his community control sanctions were, and thus, *Baker* is not helpful to our resolution of this case.

{¶24} The trial court found that the violation was nontechnical in nature, and imposed a ten-month sentence for possession of heroin. The trial court further imposed a term of incarceration of 351 days for the two aggravated trafficking convictions, and continued the defendant's community control sanctions for the other aggravated trafficking conviction.

{¶25} On appeal, the defendant contended that the trial court's ten-month sentence violated R.C. 2929.15(B)(1)(c) because the violation did not constitute a crime or other violation of the law. The Fifth Appellate District disagreed, however. The court stated that "[h]ad the legislature intended R.C. 2929.15(B)(1)(c)(i) to apply to all violations of community control that were noncriminal in nature, it could have specifically stated so in the statute." *Id.* at ¶ 14. "If the legislature intended the statute to apply solely to violations of community control which constitute criminal offenses, it would have said so directly." *Id.*

### *State v. Cozzone* and *State v. Pino*; 11th Appellate District

{¶26} In *Cozzone*, the defendant was placed on community control sanctions for three counts of theft of drugs, felonies of the fourth degree; and one count of aggravated possession of drugs, a felony of the fifth degree. The defendant violated the terms of her community control sanctions by overdosing on heroin. The trial court terminated her community control sanctions and sentenced her to 18 months on three counts, to be served consecutively, for an aggregate term of 54 months. The defendant challenged her sentence on the ground, among other grounds, that she could only be sentenced to 180 days for each of the felonies under R.C. 2929.15.

{¶27} The Eleventh Appellate District disagreed with the defendant, finding that "[a]lthough appellant was not charged or convicted for this conduct, overdosing on drugs is criminal in nature and cannot be considered a 'technical' violation of the terms and conditions of

community control." *Id.* at ¶ 39. The Eleventh District distinguished the case from other cases finding technical violations occasioned by (1) a defendant's failure to follow the probation officer's command to open the front door (*State v. Cearfoss*, 5th Dist. Stark No. 2004CA00085, 2004-Ohio-7310); and (2) a defendant's failure to notify his parole officer before moving out of his residence (*State v. Jenkins*, 2d Dist. Champaign No. 2005-CA-22, 2006-Ohio-2639).

**{¶28}** Further, the Eleventh Appellate District recognized the Twelfth Appellate District's finding of a technical violation in the context of parole: "'those violations of the terms and conditions of the parole agreement which are not criminal in nature[,] such as failure to report to the parole officer, association with known criminals, leaving employment, leaving the State, etc.'" *Cozzone*, 11th Dist. Geauga No. 2017-G-0141, 2018-Ohio-2249, at ¶ 38, quoting *Amburgey v. Ohio Adult Parole Auth.*, 12th Dist. Madison No. CA2001-07-016, 2001-Ohio-8695, 2001 WL 1256365, *3 (Oct. 22, 2001) (other citations omitted.)

**{¶29}** In *Pino*, the defendant was put on community control sanctions for an aggravated possession of drugs conviction, a fifth-degree felony. While on the sanctions, the defendant was arrested and charged with OVI, which violated two conditions of his community control sanctions: (1) that he obey all federal, state, and local laws; and (2) that he abstain from using alcohol. The defendant admitted the violations and pled guilty to having physical control of a vehicle while under the influence of alcohol, a misdemeanor. The trial court terminated the defendant's community control sanctions and sentenced him to a nine-month prison term.

**{¶30}** On appeal, citing newly enacted R.C. 2929.15(B)(1)(c)(i), the defendant contended that the trial court was bound to a maximum 90 days sentence. The defendant contended that his use of alcohol was not per se criminal. The state conceded the error and the Eleventh Appellate District agreed. The court relied on the Ohio Supreme Court's definition of a

"technical" probation violation in *State ex rel. Taylor v. Ohio Adult Parole Auth.*, 66 Ohio St.3d 121, 609 N.E.2d 546 (1993): "'those violations of the terms and conditions of the parole agreement which are not criminal in nature[,] such as failure to report to the parole officer, association with known criminals, leaving employment, leaving the State, etc.'" *Id.* at 124, quoting *Inmates' Councilmatic Voice v. Rogers*, 541 F.2d 633, 1976 U.S. App. LEXIS 7189, fn.2 (C.A.6, 1976).

**State v. Davis; 12th Appellate District**

{¶31} In *Davis*, the defendant violated his community control sanctions by voluntarily signing himself out of his CBCF where he was getting alcohol and drug treatment. The Twelfth Appellate District declined to find that the defendant's conducted constituted a technical violation of his community control sanctions. The court noted that the condition of obtaining treatment in a CBCF was a "special," rather than "standard" condition. *Id.* at ¶ 17. The court distinguished the condition from an "administrative requirement facilitating community control supervision," stating that, rather, it was a "substantive rehabilitative requirement which addressed a significant factor contributing to appellant's criminal conduct." *Id.* at ¶ 18. Therefore, the court held that the defendant's voluntary discharge from the treatment program was not a technical violation. *Id.*

**Analysis**

{¶32} Catron-Wagner violated her community control sanctions by having unacceptable AA sheets because she had signatures on three different sheets as opposed to them being individually filled out, and some of the sheets were ripped and had been taped back together. She also violated because she had tested positive for alcohol.

{¶33} As mentioned, she contends that her violations were "technical violations" and,

therefore, that she could only be sentenced to prison term of 180 days under R.C. 2929.15(B). The state, however, contends that under R.C. 1.42, we have to apply the common meaning of "technical," and under the common meaning, the appellants' violations were neither minor nor insubstantial and, therefore, not "technical" violations.

**{¶34}** In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either (1) the record does not support certain specified findings or (2) the sentence imposed is contrary to law.

**{¶35}** After careful consideration of the above-discussed case law, we conclude that under R.C. 2929.15(B)(1)(c), "technical violations" constitute, in some, but not all, circumstances, violations of community control sanctions that are neither new criminal offenses nor felony offenses. Because "technical violation" is not defined in the statute, and it is subject to different interpretations, we consider the legislative history and the circumstances under which the statute was enacted, as suggested by R.C. 1.49. R.C. 1.49 sets forth the following factors for courts to consider in determining the legislative intent of an ambiguous statute:

(A) The object sought to be attained;

(B) The circumstances under which the statute was enacted;

(C) The legislative history;

(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

(E) The consequences of a particular construction;

(F) The administrative construction of the statute.

{¶36} As we note in the companion *Neville* case, H.B. 49 was a budget bill. Gary Mohr, Director of the Ohio Department of Rehabilitation and Correction, testified before the House Finance Committee that, in regard to criminal sentencing, the purpose of the H.B. 49 amendments was to reduce the number of low-level felony offenders in state prisons. According to Mohr, although there have been "previous reform efforts, Ohio's prison population has not realized the reduction in prison population found in other states."

{¶37} The belief, according to Mohr, was that H.B. 49 "strikes the appropriate balance between treating those drug-addicted Ohioans in the community, while maintaining the Department's obligation to protect the public by safely incarcerating those who commit more serious offenses." Thus, the purpose of the relevant amendments to H.B. 49 was to reduce the amount of low-level felony offenders in the state's prison population, to save the state money, and to provide drug-addiction treatment to offenders by keeping them in their local communities.

{¶38} There has undoubtedly been a trend by the Ohio legislature over the recent years to reduce prison sentences for nonviolent, low-level offenders. For example, Am.Sub.H.B.86, effective in 2011, "raised theft thresholds, expanded diversion opportunities, lowered prison terms for certain drug crimes, limited prison time for low-level felonies, encouraged alternatives to prison, and provided mechanisms for shortened prison sentences, among other reforms." *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 16, citing Knopp, *Breaking the Cycle: Ohio Reentry Courts*, 41 Ohio N.U.L.Rev. 737, 746 (2015).

{¶39} Having noted the above, we find in this case that Catron-Wagner committed a technical violation of her community control sanctions. The record shows Catron-Wagner's efforts at complying with the numerous conditions of her community control sanctions. We decline to find that her unacceptable AA sheets (deemed so because she had signatures on three

different sheets as opposed to them being individually filled out, and some of the sheets were ripped and had been taped back together) and her testing positive for alcohol were non-technical violations — they were not new criminal offenses, were not inherently criminal in nature, and did not evidence a wholesale failure to engage in the terms of her community control.[4]

**{¶40}** In light of the above, the trial court's 17-month sentence was contrary to law because it exceeds the 180-day maximum prison sentence allowed under R.C. 2929.15(B)(1)(c). Accordingly, Catron-Wagner's sole assignment of error is sustained.

**{¶41}** Sentence vacated; case remanded for resentencing.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR

---

[4]We note that this case is distinguishable from the *Neville* companion case, in which the defendant failed to report to the probation department at all and, thus, never even started the probation process.