The State ex rel. Taylor *v.* Ohio Adult Parole Authority.

[Cite as *State ex rel. Taylor v. Ohio Adult Parole Auth.* (1993), 66 Ohio St.3d 121.]

(No. 92–1205—Submitted February 2, 1993—Decided April 14, 1993.)

*Patrick L. Taylor, pro se.*

*Lee I. Fisher,* Attorney General, and *Joseph Mancini,* Assistant Attorney General, for respondent.

*Per Curiam.* For the following reasons, we overrule Taylor's motion for default judgment (see Civ.R. 55[D]) and summary judgment, and grant respondent's motion for summary judgment. Accordingly, petitioner's request for writs of mandamus or habeas corpus is denied.

## I

Taylor first argues that he was entitled to a final parole revocation hearing within sixty days at the latest after his November 7, 1991 conviction for the new offense. In *Morrissey v. Brewer* (1972), 408 U.S. 471, at 488, 92 S.Ct. 2593, at 2603–2604, 33 L.Ed.2d 484, at 498, the Supreme Court, applying due process analysis, held that a parole "revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of

two months, as respondents suggest occurs in some cases, would not appear to be unreasonable."

Clearly, *Morrissey* did not establish an absolute, sixty-day rule. In *Inmates' Councilmatic Voice v. Rogers* (C.A.6, 1976), 541 F.2d 633, at 636, which specifically concerned parolees such as petitioner who are charged with new crimes, the Sixth Circuit Court of Appeals stated:

"APA has no authority under Ohio law to interfere with the custody of the State Court over a parolee held to answer for a new crime in violation of state law."

The court then specifically declined to fix a time limit for conducting a final parole revocation hearing.

Moreover, in *State ex rel. Jackson v. Denton* (1983), 5 Ohio St.3d 179, at 180, 5 OBR 397, at 398, 449 N.E.2d 1288, at 1289, citing *Inmates' Councilmatic Voice*, we stated that there is no sixty-day rule in cases where a new crime is committed:

"On appeal, *Inmates* declined to establish a specific time limitation for conducting a final parole revocation hearing when the parolee is arrested for committing a new crime."

Petitioner also invokes the sixty-day rule mentioned in a January 21, 1992 contempt order in the *Inmates' Councilmatic Voice* case. *Inmates' Councilmatic Voice v. Wilkinson* (Jan. 21, 1992), N.D.Ohio No. C72–1052, unreported. The order does require certain parole revocation hearings to be held within sixty days after the date on which the parolee is arrested or held by means of a detainer. However, it plainly states that "[t]he sixty-day rule is applicable to all Ohio parolees charged by Defendants with a *technical violation* of a term or condition of their parole." (Emphasis added.) *Id.* at 2. In *Inmates' Councilmatic Voice, supra,* 541 F.2d at 635, fn. 2, the Sixth Circuit Court of Appeals defined "technical violations" as "those violations of the terms and conditions of the parole agreement which are not criminal in nature[,] such as failure to report to the parole officer, association with known criminals, leaving employment, leaving the State, etc." In addition to technical violations, Taylor was charged with parole violations stemming from the theft offense of which he was convicted on November 7, 1991. These are not "technical violations" as defined by *Inmates' Councilmatic Voice.* Moreover, to the extent that Taylor was also charged with technical parole violations, the final parole revocation hearing was held within sixty days after he was taken into custody pursuant to the detainer, as explained in Part II.

## II

Due process, R.C. 2967.15 and Ohio Adm.Code 5120:1-1-19(A).

In *Moody v. Daggett* (1976), 429 U.S. 78, at 87, 97 S.Ct. 274, at 278–279, 50 L.Ed.2d 236, at 244, the Supreme Court held that due process under *Morrissey, supra,* did not entitle a federal parolee imprisoned for committing new federal crimes while on parole to an immediate parole revocation hearing after the detainer was filed but not executed:

"Indeed, in holding that '[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody,' *Morrissey,* 408 U.S., at 488 [92 S.Ct., at 2603–2604, 33 L.Ed.2d, at 498] we established *execution* of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation. This is a functional designation, for the loss of liberty as a parole violator does not occur until the parolee is taken into custody *under the warrant."* (Emphasis added.)

Therefore, under federal due process principles, no liberty interest attaches until a parolee is taken into custody pursuant to the detainer. If a loss of liberty is attributable to detention for new crimes, the parole authority has no constitutional duty to hold an immediate parole revocation hearing, regardless of his request therefor. Moreover, when the parole authority does not act on a detainer and takes the parolee into custody, it must hold the parole revocation hearing within a reasonable time, not a fixed limit of sixty days.

In the instant case, Taylor was taken into custody initially as a parole violator, but was immediately transferred to Hamilton County to stand trial on the outstanding theft charge. Thus, from October 29, 1991 until February 24, 1992, Taylor was in custody because of the intervening theft crime. Under *Moody,* he was not entitled to a final parole revocation hearing during that time. After February 24, 1992, his incarceration is attributable to the parole detainer. However, he was afforded a final parole revocation hearing within sixty days, on April 21, 1992, which *Morrissey* holds is not a violation of due process.

R.C. 2967.15, as in effect at the relevant times, like *Morrissey* also requires a final revocation hearing to take place within a reasonable time, stating in part:

"Whenever any parole officer has reasonable cause to believe that any parolee under the supervision of the authority has violated the terms and conditions of his pardon or parole, such parole officer may arrest such parolee, or may order any sheriff, deputy, constable, or police officer to make such arrest. A person so arrested shall be confined in the jail or detention home of the county in which he is arrested until released on parole or removed to the

proper institution. Upon making such arrest the parole officer shall, as soon as practicable thereafter, notify the superintendent of parole supervision, in writing, that such parolee has been arrested and is in custody and submit in detail an appropriate report of the reason for such arrest. The superintendent shall thereupon make an appropriate recommendation to the adult parole authority and shall submit a copy of the report of the parole officer to the authority which shall, within a reasonable time after receipt thereof, determine whether or not such parolee should be declared a violator of the terms and conditions of his pardon or parole.

"* * *

"In the event the authority fails to make a determination of the case of the parolee alleged to be a violator of the conditions of his pardon or parole within a reasonable time such parolee shall be released from custody under the same terms and conditions of his original pardon or parole." Am.Sub.H.B. No. 28, 130 Ohio Laws, Part II, 155.

Similarly, former [1] Ohio Adm.Code 5120:1-1-19(A) stated:

"Within a reasonable period of time after a detainer has been filed against the releasee, or the holding of the hearing required by Administrative Regulation 5120:1-1-18 [on-site, probable-cause], whichever is earlier, the releasee shall be granted a revocation hearing."

Taylor contends that he is currently entitled to be returned to parole via mandamus or habeas corpus because it was unreasonable for the parole authority not to hold a parole revocation hearing during the time he was incarcerated pursuant to the theft charge. He cites *State ex rel. Moon v. Ohio Adult Parole Auth.* (1970), 22 Ohio St.2d 29, 51 O.O.2d 60, 257 N.E.2d 740, and *State ex rel. West v. Haines* (Dec. 5, 1991), Montgomery C.P. No. 91-2955, unreported.

*Moon* concerned the following language in R.C. 2967.15:

"[A] prisoner who has been paroled, who in the judgment of the adult parole authority, has violated the conditions of his * * * parole shall be declared a violator. In such case, the time from the date of the declared violation of his * * * parole to the date he becomes available for return to the institution shall not be counted as a part of time or sentence served."

Moon was paroled in January, was arrested on a drug charge in August and held in the county jail, and had his parole revoked in September while remaining in the county jail. The drug charge was dismissed the following March, and apparently only then did the parole authority take him into

---

1. Ohio Adm.Code 5120:1-1-19 was amended, effective November 29, 1992.

custody and return him to a state penal institution. We held that R.C. 2967.15 "place[d] an affirmative duty on" the parole authority to return Moon to the institution within a reasonable time and that nothing prevented it from doing so while he was incarcerated awaiting trial on the drug charge. Accordingly, the court held that Moon was "available for return" within the meaning of R.C. 2967.15 and that a violator in that situation must either be returned or credited with the time served in the county jail. *Moon*, 22 Ohio St.2d at 31–32, 51 O.O.2d at 61, 257 N.E.2d at 741.

Under R.C. 2967.15, as interpreted by *Moon*, a parolee must be ultimately credited with time served while incarcerated on an intervening crime if he or she is not returned to the penal institution. *Moon's* reference to an "affirmative duty," taken in context, means no more than that. However, Taylor does not request that time be credited under R.C. 2967.15; he requests re-release on parole for unreasonable delay. *Moon* does not require this. The *Moon* court was clearly concerned not with the timing of the final revocation hearing (which was not an issue in that case), but instead with R.C. 2967.15's policy that a parole violator not "be incarcerated for a period of time for which he receives no credit." *Moon*, 22 Ohio St.2d at 31, 51 O.O.2d at 61, 257 N.E.2d at 741. *Moon* does not discuss or interpret R.C. 2967.15's "reasonable time" language, and does not hold that the time a parole violator "becomes available for return" is the starting point for measuring unreasonable delay.

Thus, *State ex rel. West v. Haines*, the unreported common pleas case cited by Taylor, was incorrectly decided. The *West* court's fundamental error was to assume that the "reasonable time" clock begins to run as soon as the violator is "available for return." Again, *Moon* did not so hold.

In *Coleman v. Stobbs* (1986), 23 Ohio St.3d 137, 23 OBR 292, 491 N.E.2d 1126, we established a two-part test to determine whether an alleged parole violator is entitled to habeas corpus relief when the Adult Parole Authority unreasonably delays commencing a final parole revocation hearing in violation of R.C. 2967.15 and Ohio Adm.Code 5120:1–1–19(A). The test determines whether the delay was unreasonable or prejudicial and involves consideration of six factors:

"First, it must be determined whether the delay was unreasonable. * * * This involves the consideration and balancing of three factors: (1) the length of the delay, (2) the reasons for the delay, and (3) the alleged parole violator's assertion of his right to a hearing within a reasonable period of time. * * * [I]f the delay is found to be unreasonable, it must be determined whether the delay somehow prejudiced the alleged parole violator. *Goodman* [*v. Keohane* (C.A.11, 1981), 663 F.2d 1044], *supra*, at 1046. The court must weigh any prejudice to the alleged parole violator in light of the interest protected by the

'reasonable time' requirement of R.C. 2967.15 and Ohio Adm.Code 5120:1–1–19(A). In a case involving an analogous federal 'reasonable time' requirement, the *Hanahan* [*v. Luther* (C.A.7, 1982), 693 F.2d 629] court identified three such interests: (1) prevention of oppressive prehearing incarceration, (2) minimization of anxiety and concern of the alleged parole violator, and (3) limitation of the possibility that delay will impair the accused parole violator's defense at his final parole revocation hearing. *Hanahan, supra,* at 635." *Id.,* 23 Ohio St.3d at 139, 23 OBR at 293, 491 N.E.2d at 1128.

In *Flenoy v. Ohio Adult Parole Auth.* (1990), 56 Ohio St.3d 131, at 134, 564 N.E.2d 1060, at 1063–1064, we modified the *Coleman* test by placing the prejudice factor on the same plane as the reasonableness factors so that, in theory, a petitioner may prevail without showing prejudice. However, we indicated that prejudice should ordinarily receive substantial emphasis because the remedy—outright release of a felon, and in some cases, such as this, a recidivist felon—is so drastic.

Respondent argues that we should reject Taylor's petition under a *Coleman–Flenoy* analysis, primarily because he was not shown to be prejudiced. However, we decline to even reach that level of analysis on these facts. Although Taylor was first taken into custody as an alleged parole violator, he was immediately transferred to the Hamilton County Justice Center on the outstanding theft charge. We do not view this situation as substantially different from being taken into custody directly on the theft charge. Therefore, from October 29, 1991 until February 24, 1992, Taylor's detention was due to being charged with a new crime. After February 24, 1992, his detention was due to his status as an alleged parole violator, but he received his final parole revocation within sixty days, on April 21, 1992. Neither due process of law nor R.C. 2967.15's or former Ohio Adm.Code 5120:1–1–19(A)'s "reasonable time" requirement compels a final revocation parole hearing while an alleged parole violator is imprisoned pending prosecution for, or after conviction of, another crime. *Moon, supra,* requires only proper crediting of time served.

Accordingly, Taylor has shown no right to have writs of mandamus or habeas corpus issue to order his release.

*Writs denied.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.