[Cite as *State v. Neville*, 2019-Ohio-151.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106885**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JOY NEVILLE**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-613353-A

**BEFORE:** Boyle, P.J., Blackmon, J., and Jones, J.

**RELEASED AND JOURNALIZED:** January 17, 2019

ATTORNEYS FOR APPELLANT

Mark A. Stanton
Cuyahoga County Public Defender
BY:   Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113


ATTORNEYS FOR APPELLEE

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Amy Venesile
        Mary M. Frey
Assistant County Prosecutors
Justice Center
1200 Ontario Street
Cleveland, Ohio   44113


MARY J. BOYLE, P.J.:

**{¶1}**   This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1.

**{¶2}** Defendant-appellant, Joy Neville, appeals from a judgment sentencing her to 12 months in prison for violating the terms of her community control sanctions.   She raises one assignment of error for our review:

> The trial court's twelve-month prison sentence for a technical violation of community control sanctions is contrary to law because it exceeded the 90-day maximum sentence authorized by R.C. 2929.15.

**{¶3}**   Finding no merit to her argument, we affirm.

## I. Procedural History

**{¶4}**   In December 2016, Neville and her codefendant were indicted for receiving stolen

property. In January 2017, Neville was indicted for drug possession. At a plea hearing in June 2017, the trial court dismissed the charges against Neville for receiving stolen property at the state's request in exchange for Neville pleading guilty to drug possession (less than five grams of crack cocaine) in violation of R.C. 2925.11(A), a fifth-degree felony.

{¶5} The trial court sentenced Neville on July 20, 2017. Defense counsel informed the court that Neville had been struggling with sobriety for 16 years. According to Neville's presentence investigation report ("PSI"), Neville has a lengthy criminal history beginning in 1988 when she was a teenager (although the PSI does not indicate if she was found delinquent of two juvenile charges). As an adult, she has almost 20 convictions for various offenses, including many drug possession or drug abuse charges, theft, aggravated theft, soliciting, aggravated disorderly conduct, and several other minor convictions. Neville's previous convictions were not violent offenses or sex offenses.

{¶6} Defense counsel further informed the court that Neville had mental health issues as well, including "bipolar, PTSD, anxiety, and depression." Defense counsel requested the court to take into consideration the fact that Neville would like "some additional help with her drug usage." Neville also told the court that she had "a drug problem." The trial court sentenced Neville to five years of community control sanctions with the following conditions:

[1.] Defendant to abide by the rules and regulations of the probation department.

[2.] No drugs or alcohol.

[3.] Defendant may not patronize any establishment, event, family function or work anywhere where alcohol or drugs are sold or served.

[4.] Defendant to attend a 12-step meeting every other day for 90 days, defendant to attend a meeting every other day, excluding Sunday, verifiable.

[5.] Defendant to obtain a sponsor by 8-21-17 who is female and has a minimum of 10 years sobriety. Sponsor's name and phone number to be given to

probation.

[6.] Defendant to obtain full time employment or 2 part-time jobs by 8-21-17. Employment verified through pay stubs showing all taxes taken out.

[7.] Defendant is not allowed to associate with anyone with a criminal record or with anyone engaging in criminal activities.

[8.] Defendant to pay monthly toward costs, fees and fine. Defendant to pay in equal monthly installments. All financials to be paid in full by 1-20-22.

{¶7} The trial court also suspended Neville's driver's license for five years and imposed a $1,000 fine and court costs. The trial court further notified Neville that if she violated the terms and conditions of her community control sanctions that it would sentence her to 12 months in prison.

{¶8} On August 24, 2017, the trial court issued a capias for Neville's arrest "for failure to report to probation after sentencing." Neville was arrested in early November 2017.

{¶9} On November 14, 2017, the court held a community control sanctions violation hearing. Michael Cain of the probation department told the court that Neville admitted that she violated "all of [the] conditions" of her community control sanctions because she failed to report to the probation department after she was sentenced.

{¶10} Neville told the court she was wrong for not complying. She said that when she "got released from here," her "ex was fighting for his life in ICU for 19 days." She explained that she spent a lot of time at the hospital during that time. "And then [she] just got more nervous" to report to the probation department because so much time had passed. Neville asked the court, "[g]ive me prison time, your Honor."

{¶11} The trial court found Neville to be a violator and sentenced her to 12 months in prison. It notified her that once she was released from prison, the probation department may

impose up to three years of postrelease control. It also advised her of the consequences that she would face if the probation department gave her postrelease control and she violated the terms of it. It is from this judgment that Neville now appeals.

## II. R.C. 2929.15(B)(1)(c)

{¶12} In her sole assignment of error, Neville maintains that the trial court erred when it sentenced her to 12 months in prison because under R.C. 2929.15(B)(1)(c)(i), which went into effect on September 29, 2017, the court could only sentence her to a maximum prison term of 90 days. *See* Am.Sub.H.B. No. 49. Specifically, Neville argues that failing to report to the probation department is a "technical violation," and thus, the trial court could only sentence her to 90 days in prison under R.C. 2929.15(B)(1)(c)(i). We note at the outset that this issue is one of first impression in this court.[1]

{¶13} R.C. 2929.15(B) provides (with the 2017 amendments emphasized):

(1) If the conditions of a community control sanction are violated or if the offender violates a law or leaves the state without the permission of the court or the offender's probation officer, the sentencing court may impose upon the violator one or more of the following penalties:

(a) [A longer duration of the same community control sanctions provided the total amount does not exceed the maximum five-year limit];

(b) [A more restrictive sanction, including a residential sanction under R.C. 2929.16, community service or house arrest (or many other options) under R.C. 2929.17, or a financial sanction under R.C. 2929.18];

(c) A prison term on the offender pursuant to section 2929.14 of the Revised Code *and division (B)(3) of this section, provided that a prison term imposed under this*

[1]This court addressed the newly amended R.C. 2929.15(B)(1)(c)(i) in one other case, *State v. Baker*, 8th Dist. Cuyahoga No. 106716, 2018-Ohio-4027. But in *Baker*, the precise issue that is presented in this case, the meaning of "technical violation" (and whether the defendant's violation was "technical") was not raised. Thus, *Baker* has no relevance to our analysis in this case. There are, however, two companion cases to the present case currently pending before this court that address the meaning of "technical violation" and whether the defendant's violations were merely technical. *See State v. Catron-Wagner*, 8th Dist. Cuyahoga No. 106887, and *State v. Stanko*, 8th Dist. Cuyahoga No. 106886.

*division is subject to the following limitations, as applicable:*

*(i) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fifth degree or for any violation of law committed while under a community control sanction imposed for such a felony that consists of a new criminal offense and that is not a felony, the prison term shall not exceed ninety days.*

*(ii) [Addresses when a prison term is imposed for a technical violation of the conditions of a community control sanctions imposed for a fourth-degree felony; limits prison to 180 days if merely a technical violation].*

(Emphasis added.)

### A. Applicability of R.C. 2929.15(B)(1)(c)(i)

**{¶14}** The amendments to R.C. 2929.15(B)(1)(c)(i) became effective on September 29, 2017. Neville's community control violations hearing was in November 2017. The state argues that the amendments do not apply to Neville's case. The state maintains that "R.C. 2929.15(B)(1)(c)(i) would have applied when [Neville] violated the terms of her community control sanctions" if the trial court had originally sentenced Neville to *just* community control sanctions *without* notifying her that it would send her to prison for 12 months if she violated the terms of her community control, it would impose a sentence of 12 years. We disagree with the state.

**{¶15}** The plain language of the amended statute shows that it applies to Neville's case. The first part of the statute, R.C. 2929.15(B)(1) (which was exactly the same under the prior version), states: "If the conditions of a community control sanction are violated *or* if the offender violates a law *or* leaves the state without the permission of the court or the offender's probation officer, the sentencing court may impose upon the violator one or more of the following penalties[.]" Subsection (a) provides that one option a court has if an offender violates is the court could extend the duration of the "same" community control sanctions (as long as the court

did not already impose the maximum of five years). The second option under subsection (b) states that the court could impose more restrictive sanctions.

**{¶16}** The third and final option is subsection (c), the subsection at issue in this case, which provides that the court may impose a prison term pursuant to R.C. 2929.14 (which sets forth the minimum and maximum prison sentence a court may impose for different felony levels). This is exactly what R.C. 2929.15(B)(1)(c) stated prior to the H.B. 49 amendments, that is, it ended with this sentence. But under the 2017 amendments, the General Assembly limited a trial court's discretion with respect to the amount of prison time it could impose if offenders violate their conditions of community control.

**{¶17}** All statutes that relate to the same general subject matter must be read in pari material. *Cames v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, 821 N.E.2d 180, ¶ 16. This means that in construing statutes together, a court must give them "a reasonable construction as to give the proper force and effect to each and all such statutes." *State v. Patterson*, 81 Ohio St.3d 524, 525-526, 692 N.E.2d 593 (1998), citing *Johnson's Markets, Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 567 N.E.2d 1018 (1991). The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. *Johnson's Markets* at 35. "This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict." *Id.* We shall now apply these concepts to the relevant statutes.

**{¶18}** Subsection (c)[2] now states that if an offender violates his or her conditions of community control sanctions, the court may impose the following sanction:

---

[2]Although we already set forth the language of the amended subsection (c), we will do so again to more easily read it in pari material with other statutory provisions that are mentioned within the amended language.

A prison term on the offender pursuant to section 2929.14 of the Revised Code and division (B)(3) of this section, provided that a prison term imposed under this division is subject to the following limitations, as applicable:

(i) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fifth degree or for any violation of law committed while under a community control sanction imposed for such a felony that consists of a new criminal offense and that is not a felony, the prison term shall not exceed ninety days.

(ii) [Same as subsection (i), except that it addresses when a prison term is imposed for a technical violation of a fourth-degree felony; limits prison to 180 days if merely a technical violation].

{¶19} R.C. 2929.15(B)(3), which is substantively unchanged by H.B. 49 (only two words were removed), provides:

The prison term, if any, imposed upon a violator pursuant to division (B)(1) of this section shall be within the range of prison terms available for the offense for which the sanction that was violated was imposed and shall not exceed the prison term specified in the notice provided to the offender at the sentencing hearing pursuant to division (B)[4] of section 2929.19 of the Revised Code. * * *

{¶20} R.C. 2929.19(B)(4) provides:

If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not prohibited from imposing a community control sanction, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code.

{¶21} R.C. 2929.15(B)(3) and 2929.19(B)(4) were not substantively changed by H.B. 49.

Thus, a trial court may still impose community control sanctions for the fourth- or fifth-degree felony offense at the original sentencing hearing *and still* notify an offender that if he or she violates the terms of those sanctions, it will impose a prison term "as selected by the court from

the range of prison terms for the offense pursuant to" R.C. 2929.14 and "shall not exceed the prison term specified in the notice provided." R.C. 2929.15(B)(3); 2929.19(B)(4). Applying amended R.C. 2929.15(B)(1)(c)(i) to this scenario (meaning if the trial court chooses option (c) under R.C. 2929.15(B)(1) when the offender violates), the statute now provides that the court can still impose prison *but if* the violation is *merely technical*, the trial court cannot impose the full amount of prison time that it had previously notified the offender it would impose if the offender violated the terms of his or her community controlled sanctions. Instead, if there is a technical violation of community control sanctions, the trial court can now only impose a prison sentence of 90 days for a fifth-degree felony and 180 days for a fourth-degree felony.

{¶22} Thus, we disagree with the state that because the trial court notified Neville at her original sentencing hearing that if she violated the terms of her community control sanctions that it would impose a prison term of 12 months, means that subsection (c)(i), limiting the trial court's prison option to 90 days, does not apply. The state's interpretation of the statute would render the amendments under H.B. 49 meaningless.[3]

{¶23} The amendments to R.C. 2929.15(B)(1)(c) became effective on September 29, 2017. Neville's community control violations hearing was in November 2017, and thus, we agree with Neville that amended R.C. 2929.15(B)(1)(c)(i) applies in this case.

**B. Meaning of "Technical Violation"**

{¶24} We now turn to the meaning of "technical violation," which is not defined in R.C. 2929.15(B), or anywhere else in the Ohio Revised Code. Therefore, we must determine what

---

[3]R.C. 2929.24(B)(3) was also enacted as part of H.B. 49. This provision mandates that for the ten most populated counties in Ohio (and any volunteer county agreeing to do it) that if a trial court sentences an offender to 12 months of prison or less for a fifth-degree felony (except for sex offenses, offenses of violence, mandatory offenses and those with a prior felony sex or violent offense), the offender does not go to a state prison. Rather, the offender will serve his or her time in a county facility, either a jail, community-based correctional facility, or "community alternative sentencing center." R.C. 2929.24(C).

the General Assembly intended when it limited a trial court's discretion to impose prison when an offender's violation of the conditions of his or her community control sanctions is merely "technical."

{¶25} The interpretation of a statute is a question of law that we review de novo. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9. A court's main objective is to determine and give effect to the legislative intent. *State ex rel. Solomon v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund*, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995).

{¶26} We first look to the language of the statute itself to determine the intent of the General Assembly. *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). When a statute's meaning is clear and unambiguous, we apply the statute as written. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-106, 304 N.E.2d 378 (1973). If a legislative definition of a term or phrase is available, we construe the words of the statute accordingly. R.C. 1.42. If a term or phrase is undefined in a statute, we accord it the common, everyday meaning. *Id*.

{¶27} As we stated, "technical violation" is not defined in the Ohio Revised Code nor does the phrase have a "common, everyday meaning." Under our rules of statutory construction, ambiguity means that the statutory provision is "capable of bearing more than one meaning." *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16, citing *Fairborn v. DeDomenico*, 114 Ohio App.3d 590, 683 N.E.2d 820 (2d Dist.1996). "Technical violation" is capable of more than one meaning, and thus, it is ambiguous.

{¶28} Where the words of a statute are ambiguous and subject to varying interpretations, further interpretation is necessary. *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38,

40, 741 N.E.2d 121 (2001). If a statute is ambiguous, a court may consider the legislative history and the circumstances under which the statute was enacted, as well as the consequences of a particular construction, among other things. R.C. 1.49 sets forth certain criteria that serve as guideposts for courts to follow when determining the legislative intent of an ambiguous statute. Under R.C. 1.49, courts may consider the following when determining legislative intent of an ambiguous statute:

(A) The object sought to be attained;

(B) The circumstances under which the statute was enacted;

(C) The legislative history;

(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

(E) The consequences of a particular construction;

(F) The administrative construction of the statute.

**{¶29}** Further, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42.

**{¶30}** H.B. 49 was a budget bill. Testimony before the House Finance Committee established that the purpose of the H.B. 49 amendments with respect to criminal sentencing was to reduce the amount of low-level felony offenders in state prisons. Gary Mohr, director of the Ohio Department of Rehabilitation and Correction, testified that although there have been "previous reform efforts, Ohio's prison population has not realized the reduction in prison population found in other states." Mohr further stated that H.B. 49 "strikes the appropriate balance between treating those drug addicted Ohioans in the community, while maintaining the Department's obligation to protect the public by safely incarcerating those who commit more serious offenses." Thus, the purpose of the relevant amendments to H.B. 49 was to reduce the

amount of low-level felony offenders in the state's prison population, to save the state money, and to provide drug addiction treatment to offenders by keeping them in their local communities.[4]  With this legislative history in mind, we now turn to defining "technical violation."

{¶31} Neville contends that the phrase "technical violation" has a particular meaning. She maintains that "the context of the statute makes clear that a 'technical violation' refers to the conduct in violation of the conditions of community control sanctions that is not otherwise criminal."   She asserts that "[t]he failure to report as ordered on probation is a classic example of a technical violation that is not its own criminal offense."

{¶32} Neville expands on this argument in her reply brief.   She claims that "[t]here is a 'longstanding distinction that probation officers, lawyers, and judges have made between technical and substantive probation violations: An act that violates probation conditions but isn't unlawful is a technical violation, while an act that violates conditions but is otherwise unlawful is a substantive violation.'"   In support of this argument, however, Neville only cites to out-of-state cases, including Kansas, Alabama, Mississippi, and Florida.[5]   Without knowing

---

[4]The Ohio Prosecuting Attorneys Association and the Ohio Judicial Conference opposed these amendments. According to "interested party testimony" of the Ohio Prosecuting Attorneys Association, the association argued that substantive changes to Ohio's criminal sentencing laws should not be part of a budget bill.   It further argued that "[w]hen a defendant repeatedly fails on community control, which is common, the court has to have the prison option available," otherwise "the defendant could in effect ignore the judge, knowing that the court does not have the prison option."   Further, Paul Pfeifer, executive director of the Ohio Judicial Conference, argued against the enactment of R.C. 2929.24, stating that "[j]ail capacity is already seriously stretched in most Ohio counties."   He further posed the question, "[w]hat are the common pleas judges to do with the 3400 felony 5 offenders that ODRC projects will be diverted to community control annually under H.B. 49?"

[5] *State v. Brown*, 51 Kan.App.2d 876, 880, 357 P.3d 296 (2015); *Mantez v. State*, 83 So.3d 583, 584 (Ala.App.2011), fn. 2 (the definition of a technical probation violation is a violation of a condition of probation other than the commission of a new offense); *Walker v. State*, 230 So.3d 703, 705 (Miss.2017) (defines a technical violation of probation as "an act or omission by the probationer that violates a condition or conditions of probation placed on the probationer by the court or probation officer"); *State v. Meeks*, 789 So.2d 982, 985 (Fla.2001) (distinguishing between substantive violations which involve new criminal offenses and nonsubstantive or technical violations which constitute a "mere breach of a condition of probation or community control, which is a by-product of the original offense").

anything else about the parameters of probation in these states, we decline to rely on these cases.

{¶33} The Eleventh District, however, has recently addressed the newly amended R.C. 2929.15(B)(1)(c) and the meaning of "technical violation." In *State v. Cozzone*, 11th Dist. Geauga No. 2017-G-0141, 2018-Ohio-2249, the Eleventh District looked to previous cases that discussed technical violations pertaining to the revocation of community control sanctions and parole violations, but that predated the statutory amendment of R.C. 2929.15(B)(1)(c). *Id.* at ¶ 38, citing *State v. Cearfoss*, 5th Dist. Stark No. 2004CA00085, 2004-Ohio-7310 (defendant's failure to follow his probation officer's order to open the front door was a "technical" violation); *State v. Jenkins*, 2d Dist. Champaign No. 2005-CA-22, 2006-Ohio-2639, ¶ 15 (defendant's failure to notify his parole officer before moving out of his residence where a convicted felon resided was "at best a 'technical' violation"); and *Amburgey v. Ohio Adult Parole Auth.*, 12th Dist. Madison No. CA2001-07-016, 2001 Ohio App. LEXIS 4730 (Oct. 22, 2001) ("technical violations" in the context of parole are those violations of the terms and conditions of the parole agreement that are not criminal in nature, such as failure to report to the parole officer, association with known criminals, leaving employment, and leaving the state).

{¶34} In *Cozzone*, the Eleventh District held that the defendant violated the terms of her community control sanctions by overdosing on heroin. The Eleventh District reasoned that overdosing on drugs was criminal in nature and, therefore, could not be considered a "technical violation" of community control. *Id.* at ¶ 39.

{¶35} Soon after *Cozzone*, the Eleventh District had another occasion to address the meaning of "technical violation" in R.C. 2929.15(B)(1)(c) as amended by H.B. 49. In *State v.*

*Pino*, 11th Dist. Lake No. 2017-L-171, 2018-Ohio-2825, the defendant was convicted of fifth-degree-felony aggravated drug possession. The trial court sentenced him "to 16 days in jail, with 16 days credit for time served; two years community control sanctions; a fine and court costs; and the suspension of his driver's license." *Id*. at ¶ 2. The defendant was later arrested and charged with OVI. "This violated rule one of his probation, which demanded that he obey all federal, state and local laws; and rule eight, which prohibited him from using alcohol." *Id*. at ¶ 3. Pino pleaded guilty to "having physical control of a vehicle while under the influence of alcohol," a misdemeanor, and admitted his probation violations. *Id*. at ¶ 3, 6.

**{¶36}** The Eleventh District explained:

[Pino] notes he was under community control sanctions for having committed a fifth-degree felony, and that the sanctions were revoked for two reasons: (1) he pleaded guilty to a misdemeanor, having physical control of a vehicle while under the influence of alcohol; and (2) he broke two rules of probation — one that he not break any law, the second, that he not use alcohol. The latter he argues is a mere technical probation violation, citing to the opinion in *State ex rel. Taylor v. Ohio Adult Parole Auth*. 66 Ohio St.3d 121, 124, 609 N.E.2d 546 (1993), in which the court adopted the definition of a "technical" probation violation espoused by the United States Court of Appeals for the Sixth Circuit in *Inmates' Councilmatic Voice v. Rogers,* 541 F.2d 633 (1976). The Sixth Circuit held that a technical violation is one which merely violates the terms of probation, but which is not, itself, criminal. *Id*. at 635, fn. 2. As Mr. Pino observes, drinking alcohol is not per se criminal in Ohio.

*Id.* at ¶ 6.

**{¶37}** The Eleventh District agreed with Pino, stating:

Under [*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231], the trial court's sentence in this case is clearly contrary to law, since, for all the reasons marshalled by Mr. Pino, the trial court was limited to sentencing him to 90 days imprisonment under R.C. 2929.15(B)(1)(c)(i). * * * [T]he state concedes that Mr. Pino is correct.

*Id*. at ¶ 14.

**{¶38}** The Eleventh District summarily agreed with Pino that *State ex rel. Taylor* and

*Inmates' Councilmatic Voice* defined what "technical violation" means, but the court did not analyze these cases, and thus, we will do so here. We note, however, that these cases are not directly on point.

{¶39} *Inmates' Councilmatic Voice* considered Ohio Adult Parole Authority ("OAPA") procedures for parole revocation hearings after a parolee commits a criminal offense outside of the state of Ohio. The Sixth Circuit explained in *Inmates' Councilmatic Voice* that the parties in the case could not agree "upon the procedures to be followed when (1) the parolee is arrested for a new crime committed in Ohio and (2) when the parolee is arrested and incarcerated outside the state of Ohio for committing a new crime." *Id*. at 635. The court stated in dicta, however, that OAPA procedures regarding "technical violations" of parole were "not at issue" in the case and defined "technical violations" in a footnote as "those violations of the terms and conditions of the parole agreement which are not criminal in nature such as failure to report to the parole officer, association with known criminals, leaving employment, leaving the state, etc." *Id*. at 635, fn. 2.

{¶40} In *State ex rel. Taylor*, the petitioner argued that he was entitled to a "final parole revocation hearing within sixty days" after he was convicted of a misdemeanor theft offense. *Id*. at 124. The Supreme Court disagreed and held that a parole violator was not entitled to a final revocation parole hearing while the violator was imprisoned pending prosecution for, or after conviction of, another crime. *Id.* at 128. It explained,

> Petitioner also invokes the sixty-day rule mentioned in a January 21, 1992 contempt order in the *Inmates' Councilmatic Voice* case. *Inmates' Councilmatic Voice v. Wilkinson* (Jan. 21, 1992), N.D.Ohio No. C72-1052, unreported [the district court case]. The order does require certain parole revocation hearings to be held within sixty days after the date on which the parolee is arrested or held by means of a detainer. However, it plainly states that "[t]he sixty-day rule is applicable to all Ohio parolees charged by [the OAPA] with a technical violation of a term or condition of their parole." (Emphasis added.) *Id*. at 2. In

*Inmates' Councilmatic Voice*, supra, 541 F.2d at 635, fn. 2, the Sixth Circuit Court of Appeals defined "technical violations" as "those violations of the terms and conditions of the parole agreement which are not criminal in nature[,] such as failure to report to the parole officer, association with known criminals, leaving employment, leaving the State, etc."   In addition to technical violations, Taylor was charged with parole violations stemming from the theft offense of which he was convicted on November 7, 1991.   These are not "technical violations" as defined by *Inmates' Councilmatic Voice*.   Moreover, to the extent that Taylor was also charged with technical parole violations, the final parole revocation hearing was held within sixty days after he was taken into custody pursuant to the detainer[.]

*Id.*

{¶41} After reviewing the Eleventh District cases, we find that the court did not draw a bright-line rule as to the meaning of "technical violation" in R.C. 2929.15(B)(1)(c)(i). Although the Eleventh District concludes in *Cozzone*, 11th Dist. Geauga No. 2017-G-0141, 2018-Ohio-2249, that the violation was not a technical violation, the defendant in that case overdosed on heroin, which the Eleventh District explained was "criminal in nature."   *Id.* at ¶ 39.   But overdosing on heroin (possessing heroin) is a felony.   *See* R.C. 2925.11(C)(6).   Thus, under R.C. 2929.15(B)(1)(c)(i), the trial court could impose more than 90 days in prison — without considering the meaning of "technical violation" at all.

{¶42} Similarly, in *Pino*, 11th Dist. Lake No. 2017-L-171, 2018-Ohio-2825, the Eleventh District did not define "technical violation."   Rather, the Eleventh District made conclusions based on the specific facts presented before it.   Specifically, the court agreed with Pino that he could only receive 90 days in prison for his violations because he committed a misdemeanor (having physical control of a vehicle while under the influence of alcohol), and he broke two rules of probation (not break any law and not drink alcohol).   *Id.* at ¶ 14.   Although the Eleventh District cited to *Inmates' Councilmatic Voice* and *State ex rel. Taylor*, it did not adopt the dicta definition in those cases as a bright-line rule in R.C. 2929.15(B)(1)(c)(i).

**{¶43}** We also conclude that *Inmates' Councilmatic Voice* and *State ex rel. Taylor* do not provide the meaning of "technical violation" as set forth in R.C. 2929.15(B)(1)(c)(i). The General Assembly could have adopted the dicta definition of "technical violation" as set forth in these cases but it did not. Moreover, these cases are simply not on point with the issue before us.

**{¶44}** After review, we disagree with Neville that "technical violation" refers *only* to violations "that are not otherwise criminal." Although Neville did not commit a new criminal offense, she failed to report to her probation officer from the time of her sentencing, which was on July 20, 2017, until she was arrested on a warrant over three months later. Three-plus months of avoiding community control sanctions — *failing to report at all* — is not a mere technical violation. By not reporting at all, Neville failed to meet *any of the conditions* of her community control sanctions. Rather, we find the facts here more analogous to the facts in *State v. Davis*, 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672.

**{¶45}** In *Davis*, the Twelfth District disagreed with the defendant that "voluntarily signing himself out of a CBCF in violation of his community control was merely technical in nature." *Id*. at ¶ 17. The court reasoned,

> [A]ppellant's community control sanctions included standard rules and conditions as well as several "special conditions." One such condition required appellant to complete treatment at a CBCF. Appellant's voluntary discharge from the CBCF's program and thus his failure to complete treatment there were not a violation of a standard term of community control, but rather, were a violation of a special condition of community control directly imposed by the trial court and specifically tailored to address and treat appellant's substance abuse issues.

*Id. See also State v. Mannah*, 5th Dist. Fairfield No. 17-CA-54, 2018-Ohio-4219, ¶ 15 (following *Davis* and finding that the defendant's action of voluntarily leaving a CBCF was "non-technical in nature," and therefore the trial court did not err when it imposed the ten months

prison sentence that it had originally notified her it would impose if she violated the terms of community control sanctions).

{¶46} The local rules of Cuyahoga County Common Pleas Court, General Division, provide in relevant part:

> If the Court grants probation, the Court shall cause the sentence to be journalized, and the defendant shall immediately report and be placed under the control and supervision of the department. The department will instruct the defendant on the general rules of probation and any special conditions imposed by the Court.

Loc.R. 32.0.

{¶47} In this case, the trial court imposed a number of special conditions and specifically warned Neville that if she violated any of them, she would sentence her to 12 months in prison. Neville not only failed to report for over three months, she *never reported at all*. Therefore, Neville failed to engage in any of the conditions of her community control. If we were to adopt Neville's interpretation of the statute, then an offender who fails to report indefinitely or manages to avoid coming into contact with the criminal justice for months or even years could potentially avoid any punishment for committing a fifth-degree felony offense. This could not be what the legislature intended.

{¶48} Thus, we conclude that Neville's violation here was not a technical violation. The outcome of this case would have likely been different had Neville failed to report for one meeting with her probation officer after she had previously reported. Failing to report one time after previously reporting may be a technical violation — depending on all of the other factors of that individual case. But here, Neville failed to report at all for over three months, and thus, failed to comply with any of the conditions imposed for her community control sanctions.

{¶49} In sum, it is our view that the legislature did not intend to limit the meaning of "technical violation" *only* to conduct that is not criminal in nature. Rather, it is our view that

the General Assembly intended to allow the judge to retain some discretion when faced with more serious violations that do not rise to the level of a crime. This case is a perfect example as to why the General Assembly did so — because if Neville had not been arrested on the capias in November 2017, she could have indefinitely avoided all punishment and treatment for her drug addiction. This directly contravenes the stated purposes of H.B. 49.

{¶50} As the Fifth District stated in *Mannah*, 5th Dist. Fairfield No. 17-CA-54, 2018-Ohio-4219:

> Had the legislature intended R.C. 2929.15 (B)(1)(c)(i) to apply to all violations of community control which were non-criminal in nature, it could have specifically stated so in the statute. Thus, the choice of the term "technical" implies it has meaning distinct from "non-criminal" violations. R.C. 2929.15(B)(1)(c)(i) specifically sets forth the ninety-day sentence limitation applies for violations of the law which are not felonies, if community control was imposed for a felony. If the legislature intended the statute to apply solely to violations of community control which constitute criminal offenses, it would have said so directly.

*Id.* at ¶ 14.

{¶51} Accordingly, Neville's sole assignment of error is overruled.

{¶52} We do note that on February 8, 2018, the court issued a judgment entry stating that it had "no comment" on the Ohio Department of Rehabilitation and Correction's request to place Neville in a "transitional control release program."

{¶53} The Cuyahoga County Common Pleas Court docket indicates that on July 25, 2018, Neville was indicted on escape charges (in Cuyahoga C.P. No. 18-CR-630602) with the date of the offense being March 15, 2018.[6] Thus, Neville spent 82 days in prison on the present case before she was released to a transitional program *that she never made it to.* Neville

---

[6]"A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *See State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, 877 N.E.2d 968, ¶ 20.

pleaded guilty to fifth-degree felony escape in CR-18-630602 in September 2018, and was sentenced in October 2018. The court sentenced Neville to three years of community control sanctions with a number of conditions, including being placed in a CBCF in Summit County if eligible.

**{¶54}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
LARRY A. JONES, SR., J., CONCUR