[Cite as *State v. Ross*, 2019-Ohio-4368.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-9 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-180 |
| | : | |
| DERRICK SCOTT ROSS | : | (Criminal Appeal from |
| | : | Common Pleas Court ) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 25th day of October, 2019.

. . . . . . . . . .

KEVIN TALEBI, Atty. Reg. No. 0069198, 200 North Main Street, Urbana, Ohio 43078
     Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 West Monument Avenue, Dayton, Ohio
45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

**{¶ 1}** Derrick Scott Ross was indicted on one count of aggravated possession of drugs, a fifth-degree felony, on September 7, 2016. He pled guilty on October 26, 2017 and was sentenced on that date to community control supervision. The trial court ordered that if he violated the conditions of community control he would be sentenced to 12 months in prison. Ross did not pursue a direct appeal.

**{¶ 2}** A notice of supervision violation was filed on February 27, 2019. Evidentiary hearings were held on March 8 and 14, 2019. The trial court found that Ross had committed multiple violations of his supervision and sentenced him to 12 months in prison. Ross appeals.

**{¶ 3}** Ross's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that there are no meritorious issues for appeal. By order filed July 9, 2019, we informed Ross of the *Anders* filing and advised him of his right to file his own brief and the time limit for doing so. Ross has not filed a pro se brief, and the time for filing has expired.

### The allegations and course of proceedings

**{¶ 4}** On February 27, 2019, in a notice of supervision violation, the probation officer indicated Ross had violated supervision rule number one, obeying the law, by (a) posting nude pictures on Facebook of his girlfriend and housemate K.B., (b) refusing to let K.B. leave her residence, (c) threatening to cause harm to K.B., and (d) destroying K.B.'s property; violation of rule number two, following probation-officer orders, by failing to report on November 1, 2018; and violation of rule number nine, not using drugs, by using methamphetamines. On March 1, 2019, Ross did not deny the existence of probable cause, but he denied the violation allegations. A hearing was scheduled for

March, 8, 2019.

{¶ 5} At the beginning of the March 8 hearing, counsel for Ross objected to proceeding and requested a continuance because Ross had been charged in municipal court with offenses relating to the events giving rise to the supervision violations. He argued that to defend himself on the supervision violations he would have to take the stand, and that would preclude him from exercising his right to remain silent at his criminal trial. In denying a continuance, the trial court referred to the seriousness of the supervision violation allegations, Ross's alleged use of methamphetamines, and the potential for a prison sentence for the violations as opposed to local jail time if he were to be convicted on misdemeanors.

{¶ 6} Testimony at the revocation hearing revealed Ross was living in Woodstock, Ohio, with his girlfriend, K.B. The girlfriend testified at the March 8 violation hearing that on October 27 and 28, 2018, they were involved in a heated argument and were in the process of separating. During those days, Ross had taken her cell phone, let the air out of one of her tires, and disconnected the battery of her car. He also pulled her into the house, would not let her leave, and threatened to kill both of them. Eventually she was able to leave and went to her mother's, where she called the police. Upon returning to her house, K.B. found that Ross was gone, but she found the house "flipped upside down;" the couch was torn apart, there was trash everywhere, her "bedroom had been torn apart," and there were several holes from cigarette burns. There were hand-printed signs on the inside and outside of the house referring to K.B. as a whore and worse, and her lingerie was hanging in the front yard. K.B. testified Ross "never physically hurt me during any of this." She also testified that he posted nude and scantily-clad pictures of her on Facebook.

{¶ 7} Ross's probation officer, Chris Caughman, testified that he learned of the above events from a sheriff's deputy, and they tried to locate Ross. They went to his grandmother's and his boss's houses but could not find him. On November 1, 2019, Ross called Caughman on the phone and asked if he was going to jail. Caughman ordered Ross to report to his office and informed him that Ross would be held until Caughman could get Ross's statement and check out the allegations. Ross said he would report, but he did not. A capias was issued for his arrest on November 9, 2018, and he was eventually picked up on February 23, 2019.

{¶ 8} Caughman met with Ross at the Tri-County Jail on February 25, 2019. Ross said he had believed K.B. was cheating on him, they had gotten into an argument, and he had been leaving. He stated they "both" broke things at the house, but he admitted he was responsible for creating the signs inside and outside the house. He acknowledged he had been ordered to report but did not do so because he did not want to go to jail. He admitted that if drug tested he would be positive for methamphetamines, but said he was unable to provide a urine sample.

{¶ 9} During the March 8 hearing, Ross's counsel stated "we're not contesting the methamphetamine charge violation." TR. 62.

{¶ 10} On March 14, 2019, the hearing continued, and Ross testified after renewing his motion for a continuance. He denied that he had threatened K.B. and denied he had done anything to her car other than inflate a low tire. He admitted he broke a box fan that was his, and he admitted to creating the derogatory handwritten signs at their house, but he denied her other allegations. He admitted to use of methamphetamines "a couple of times," but he had already admitted the drug use to his probation officer. He

acknowledged he was ordered to report to his probation officer on November 1, 2018 and admitted he did not.

{¶ 11} At the conclusion of the hearing, the trial court stated: "Defendant's explanation of events – well, it is just not credible." TR. 97. The court found that Ross violated rules one, two, and nine of his supervision as alleged. The court revoked community control and sentenced Ross to 12 months in prison with credit for time spent in jail.

## Potential assignments of error

{¶ 12} Although appellate counsel found a "search of applicable law led counsel to conclude that such potential issues do not have merit," the *Anders* brief refers to unnumbered potential legal issues which we address. First, counsel inquires whether the 12-month sentence was appropriate. The 12-month sentence is within the statutory range for a fifth-degree felony and therefore is not contrary to law. R.C. 2929.14(A)(5). The 12-month sentence is the sentence reserved by the trial court at the original sentencing for the offense. The trial court specifically considered R.C. 2929.11 and 2929.12 in court and in its entry. There is simply nothing in the record to support any reasonable argument about the propriety of the court's sentence.

{¶ 13} Counsel indicates that due process applies to a probation-revocation proceeding, citing *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). We do not disagree. However, there is nothing in the record to support any argument that due process was denied. Ross was given written detailed notice of the violations and was represented by counsel at a full evidentiary hearing before the trial court, which detailed the reasons for revoking his community control. Nowhere in the

record is there any factual support for a denial-of-due-process argument.

{¶ 14} Counsel indicates that a trial court has broad discretion to grant or deny a motion for a continuance. That notion is coupled with references to the Fifth Amendment privilege against being compelled to be a witness against oneself. One could infer that means there could be a potential assignment of error that the court should have granted Ross's request for a continuance to allow him to dispose of the new misdemeanor criminal charges before having to face the revocation proceedings. But there is no authority to support a conclusion that he was entitled to a continuance. *See*, *e.g.*, *State v. Koenig,* 3d Dist. Van Wert No. 15-06-11, 2007-Ohio-1904, ¶ 16; *accord State v. Sallaz,* 11th Dist. Trumbull No. 2003-T-0009, 2004-Ohio-3508, ¶ 46-47. (finding that the "court was under no duty to continue the probation revocation hearing until the [pending new] DUS charge was resolved"). Given the nature of the alleged supervision violations, two out of the three of which had nothing to do with the new misdemeanor charges, there is nothing in this record to reasonably argue that the trial court abused its discretion in proceeding to resolve the supervision violations.

{¶ 15} In any event, on this record we see no prejudice resulting from the trial court's decision to proceed on the revocation.[1] Ross denied any criminal conduct associated with the events of October 27 and 28, and his statements therefore were exculpatory. The statements would not have been admissible in subsequent proceedings

---

[1] The Champaign County Municipal Court online docket indicates Ross's misdemeanor charges in Case Nos. 18CRA01013 and 18CRB01012 were dismissed on February 28, 2019 and April 1, 2019 respectively. The entry in the latter case indicated that Ross was to be incarcerated on his felony for one year. Champaign County Municipal Court Online Docket, Case No. 18CRB1012, http://web1.civicacmi.com/ChampaignCoMC/Site/LookupResults.aspx (accessed 10-22-2019).

except perhaps for impeachment if he testified and told a different story. An argument that he should have been granted a continuance or that he was prejudiced by the denial of one has no arguable merit.

{¶ 16} Finally, counsel recites R.C. 2929.15(B)(1)(c)(i), which limits the penalty for technical community control violations to 90 days of local incarceration instead of a prison term. On this record we do not believe a reasonable argument can be made that Ross's multiple violations amounted to technical violations. "[T]he General Assembly did not intend for individuals who [never report to probation or who fail to engage in any of the conditions of community control] to be considered 'technical' violators." *State v. Stanko*, 8th Dist. Cuyahoga No. 106886, 2019-Ohio-152, ¶ 10. Furthermore, Ross admitted to multiple uses of methamphetamine. Even if a defendant is not charged or convicted for this conduct, "purchasing, possessing, and using a Schedule II, controlled substance is a felony criminal offense. R.C. 2925.11(A)(C)(1)(a). Therefore, it could not be considered a 'technical violation' of community control." *State v. Wolfe*, 5th Dist. Licking No. 18-CA-60, 2019-Ohio-2294, ¶ 14, citing *State v. Cozzone*, 2018-Ohio-2249, 114 N.E.3d 601, ¶ 9 (11th Dist.); *see also State v. Neville*, 8th Dist. Cuyahoga No. 106885, 2019-Ohio-151, ¶ 48 ("Failing to report one time after previously reporting may be a technical violation—depending on all of the other factors of that individual case. But here, Neville failed to report at all for over three months, and thus, failed to comply with any of the conditions imposed for her community control sanctions.") An argument that Ross's multiple infractions only amounted to "technical violations" does not have arguable merit.

### *Anders* review

{¶ 17} We additionally have conducted a thorough and complete examination of

all the proceedings to determine whether this appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), citing *Anders* at 744. We further note that Ross is precluded by the doctrine of res judicata from raising, in this appeal from the revocation of his community control, any issue that he could have, and should have, raised on a direct appeal from the judgment of conviction in which community control was first imposed. *State v. Turner*, 2d Dist. Montgomery No. 27350, 2017-Ohio-4101, ¶ 8.

{¶ 18} We have also specifically considered whether an additional potential assignment of error has arguable merit. We examined R.C. 2929.13(E)(2), which requires the trial court to "determine on the record" one of two statutory criteria before imposing a prison term for a community control violation if the violation is "solely by reason of producing positive results on a drug test." Although Ross technically did not fail a drug test, one could argue that failure to provide a urine sample, in drug-testing protocol, is considered a test failure. But we believe that statutory section is inapplicable here. Ross admitted to multiple uses of methamphetamine, not just one. Furthermore, because there were other supervision violations leading to his sentence, the result was not "solely" because of a failed test, and the trial court was not required to make R.C. 2929.13(E)(2) findings. On this record an argument to the contrary does not have arguable merit.

{¶ 19} We have reviewed the docket, the various filings, the written transcripts of the revocation hearing, the presentence investigation report, and the sentencing entry. We have found no non-frivolous issues for review. Accordingly, the judgment of the Champaign County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.


Copies sent to:

Kevin Talebi
Sean Brinkman
Derrick Scott Ross
Hon. Nick A. Selvaggio